Howard CADY, Appellant,

v.

TWIN RIVERS TOWING COMPANY and Consolidation Coal Company.

No. 72–1687.

United States Court of Appeals, Third Circuit.

Argued Sept. 10, 1973.

Decided Nov. 12, 1973.

---

**1336**

Hymen Schlesinger, Pittsburgh, Pa., for appellant.

Anthony J. Polito, Rose, Schmidt & Dixon, Pittsburgh, Pa., for appellees.

Before McLAUGHLIN, VAN DUSEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal raises issues concerning the rights of seamen who invoke the grievance machinery of a collective bargaining agreement for alleged wrongful discharge and demotion to also sue for damages for the same alleged contractual violation. Appellant, Howard Cady, plaintiff below, challenges the district court's entry of summary judgment in favor of appellees, his former employers, Consolidation Coal Company (Consol) and Twin Rivers Towing Company (Twin Rivers) on two counts of his five-count complaint.[1] The opinion of the district court is reported at 339 F.Supp. 885 (W.D.Pa.1972). We affirm the judgment of the district court.

In October 1968 Cady was employed as a riverboat pilot by Consol. On October 6 Consol informed him that he was to be suspended as a result of his personal involvement in an accident in which two persons lost their lives and for which Consol was subsequently adjudicated liable. At the time, Cady was a member of and represented by the International Organization of Masters, Mates and Pilots, Inc., (Pilots Union) which was a party to a collective bargaining agreement with Consol.

The Pilots Union invoked the grievance machinery of the collective bargaining agreement and contested Consol's disciplinary action. The grievance was disposed of by an interim agreement dated October 6, 1968, signed by the parties, which provided for the demotion of Cady from pilot to mate. This settlement agreement also reserved to the Union the right to initiate "further discussion concerning the appropriateness of the demotion" and "the right to submit the decision of the company as to such demotion to arbitration." Several days later, after a second meeting between representatives of Consol and the Pilots Union and also attended by Cady, a final agreement was signed. This agreement provided that if the Union did not concur in the demotion the parties would submit the grievance to arbitration as provided by the collective bargaining agreement without processing it through the intermediate grievance procedures.[2] No request for arbitration was thereafter made by Cady or his Union.

On December 24, 1969, Cady, having since been employed by Twin Rivers, a wholly owned subsidiary of Consol, was

---

1. We heard this appeal after appropriate certification had been made pursuant to Fed.R.Civ.P. 54(b) that there was no just reason for delay.

2. Although the agreement formally provided for demotion from pilot to mate, Cady assumed the duties of deckhand because of his lack of seniority for the position of mate.

temporarily suspended from employment because of his possession and drinking of alcoholic beverages while on duty on board the M.V. TOM, JR. He was later advised of a hearing to be held on January 7, 1970, at which time he was invited to appear, present witnesses, and be represented. He acknowledged receipt of the notice of hearing but declined to attend. The National Maritime Union (Maritime Union), to which he now belonged,[3] did however meet with a representative of Twin Rivers. On January 9, 1970, Twin Rivers completed its review of Cady's case and notified him that it had decided to discharge him effective January 9, 1970. The Maritime Union notified Twin Rivers that it wished to file a grievance on behalf of Cady. Several days later representatives of the Maritime Union and Twin Rivers met and discussed the decision to discharge Cady. Twin Rivers subsequently denied the grievance filed by the Maritime Union on behalf of Cady and reaffirmed the discharge. Cady was informed by the Maritime Union that it did not intend to take the matter to arbitration as it considered this action would be "a losing battle." No demand for arbitration was thereafter filed by either Cady or the Maritime Union.

The district court held that Cady's causes of action against both Consol and Twin Rivers were barred by the good faith disposition of the claims pursuant to the grievance procedures of the applicable collective bargaining agreements and granted both employers' motions to dismiss. On appeal, Cady vigorously urges that federal courts have traditionally exercised jurisdiction over claims of seamen for wages and "such claims are highly favored by the courts." He argues that a seaman's action against his employer based on grievances arising out of a collective bargaining agreement are not barred by the existence of and resort to binding grievance procedures of that contract. He contends, in support of his

argument, (1) that he has the "optional remedy of a suit" against his employers under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185 (a), which, because of the breach by his unions of their duty of fair representation, is not barred by disposition of his claims under the contract grievance procedures, and (2) that seamen are entitled to special consideration in the district court under the recent decision of the Supreme Court in United States Bulk Carriers, Inc. v. Arguelles, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971). We find no merit in either contention.

As to his first contention, Cady argues, for the first time on appeal, that he is entitled to bring his action for wrongful discharge and demotion under Section 301 of the Labor Management Relations Act because his unions processed his claim in bad faith. The Supreme Court has indicated that before an employee, who has submitted his claim to the contract grievance procedure, may maintain a cause of action against his employer he must offer proof that the union representing him breached its statutory duty of fair representation. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Such proof must be timely asserted. Lomax v. Armstrong Cork Co., 433 F.2d 1277 (5th Cir. 1970). The infirmity in Cady's contention is his failure to allege or prove any facts with respect to this issue in a timely manner before the district court. Since Cady was notified of the need for such assertions by defendants' briefs filed with their motions for summary judgment and failed to plead or produce affidavits raising such issues, he is properly precluded from raising such issues on appeal. Bogacki v. American Machine & Foundry Company, 417 F.2d 400, 407 (3d Cir. 1969); Crompton-Richmond Co., Inc.-Factors v. Smith, 392 F.2d 577 (3d Cir. 1967); Shafer v. Reo Motors, Inc., 205 F.2d 685 (3d Cir. 1953). Absent a showing

3. Upon his demotion from pilot to deckhand, see note 2, supra, Cady was apparently no longer eligible for membership in the Inter-

national Organization of Masters, Mates and Pilots, Inc., and joined the National Maritime Union.

of breach of the Union's duty of fair representation, disposition of the claim pursuant to the grievance procedures of the contract is final. Haynes v. United States Pipe & Foundry Co., 362 F.2d 414 (5th Cir. 1966).

Secondly, Cady argues that in its recent decision, United States Bulk Carriers, Inc. v. Arguelles, *supra*, the Supreme Court has excepted seamen, as a special class of workers from the principles of federal labor law developed under Section 301(a) in the cases of Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) and Vaca v. Sipes, *supra*. He maintains that seamen need not utilize the contractual grievance procedures of an applicable collective bargaining agreement. Rather, he argues, they may submit at their option to the district court all claims, even those based upon disputes previously the subject of the grievance machinery. Implicit is the contention that such action may be brought even absent allegations that the contract grievance machinery proved inadequate to protect the employee's interest.

Like the district court, we feel that the principle established in *Arguelles* is a narrow one and neither applies to nor controls the case sub judice.

The Court in *Arguelles* created a narrow exception to an earlier case, Republic Steel Corp. v. Maddox, *supra*, which had established the principle that where the terms of employment were governed by a collective bargaining agreement, an employee, before submitting his claims to court, must attempt the use of the contract grievance procedure. 379 U.S. at 652, 85 S.Ct. 614. In *Arguelles* the Court held that the presence of a griev-

ance procedure clause of a collective bargaining agreement did not bar a seaman, at his option, from pursuing a statutory remedy for collecting wages due and owing pursuant to the provisions of 46 U.S.C. § 596.[4] Concerned with the possible inconsistencies between two statutory remedies, 46 U.S.C. § 596 and Section 301 of the Labor Management Relations Act, the Court held that the "earlier, express, and alternative method of collecting seaman's wages contained in 46 U.S.C. § 596" was not displaced by Section 301 and that seamen need not submit such statutory claims to the contract grievance procedure prior to commencing their suit.

In contrast to the seaman's suit in *Arguelles*, Cady's claim involves an action not for wages but for damages. His action is based not on an alternate, independent statutory remedy but on the seamen's common law right to sue for breach of an employment contract. We are unable to discern in *Arguelles* any indication that the Court intended to create for seamen a broad exception to the principle of *Maddox* when, as here, no alternate statutory remedy is available.

Even were we to sanction Cady's right, as a seaman, to bring his claim to court prior to submitting it to the contract grievance machinery, we are faced with the fact that Cady had already invoked the grievance procedures. As noted above, in these circumstances the courts are unwilling to recognize such claims absent allegations that the grievance machinery proved inadequate to settle the claim. Neither *Arguelles*, which concerned a seaman who did not pursue the contract grievance procedure, nor

4. 46 U.S.C. § 596 provides in pertinent part:
The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens . . . and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the bal-

ance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court . . . .

any other case cited by Cady is to the contrary.

We are not aware of any cases to support the proposition that seamen suing under collective bargaining agreements are accorded special rights. On the contrary, principles developed under Section 301(a) have been held to apply to seamen in ways no different from other workers. *See*, Freedman v. National Maritime Union of America, 347 F.2d 167 (2d Cir. 1965); Brandt v. The United States Lines, Inc., 246 F.Supp. 982 (S.D.N.Y.1946). When, after submitting his claim to the contract grievance procedure of a collective bargaining agreement, a seaman asserts a claim for wrongful discharge and demotion and invokes no statutory basis independent of Section 301(a) for relief, the good faith disposition of his claim pursuant to contract procedure is final. Haynes v. United States Pipe & Foundry Co., *supra*.

The judgment of the district court will be affirmed. Each party will bear its own costs.