Warren FRAME

v.

B. F. GOODRICH COMPANY.

Civ. A. No. 77–2042.

United States District Court,
E. D. Pennsylvania.

June 28, 1978.

■■■■■■■■■■

Joseph Lurie, Philadelphia, Pa., for plaintiff.

William J. Woodward, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff, Warren Frame, a retired employee of defendant, B. F. Goodrich Company ("Goodrich"), has filed this action pursuant to § 301 of the Labor Management Relations Act ("Act"), 29 U.S.C. § 185, alleging that Goodrich wrongfully withheld disability pension payments from him in violation of the Agreement on Employee Benefit Programs ("Agreement") between Goodrich and the plaintiff's Union. The Union, the International Union of the United Rubber, Cork, Linoleum, and Plastic Workers of America, AFL–CIO ("Union"), is not a defendant and no claim of improper representation has been made against it. The defendant has filed a motion for summary judgment on the ground that the plaintiff is precluded from bringing this action because the Agreement provides a specified grievance procedure as the exclusive method of settling all disputes arising under the contract. The plaintiff opposes the motion on the ground that he has exhausted his non-judicial remedies, and that this Court should adjudicate his dispute with Goodrich under § 301 of the Act. For the reasons hereinafter set forth, the Court will grant the defendant's motion for summary judgment.

The material facts are not in dispute. Plaintiff is a former Goodrich employee who became disabled on July 13, 1973 and was placed on Goodrich's Disability Pension Roll as of January 1, 1974, pursuant to the terms of the Agreement. The amount of the plaintiff's disability pension payments was determined under Article 5, paragraph 5.3 of the Agreement, which sets the amount of an employee's disability pension at one of two levels, depending on whether or not the disabled employee is also eligible for unreduced disability benefits or unreduced primary old age insurance benefits under Social Security. Under the Agreement, employees who are not entitled to unreduced Social Security benefits receive from Goodrich approximately double the monthly benefit received by those entitled to unreduced Social Security benefits. The disability pension plan attempts to assure a rough parity of disability income for all employees covered by the Agreement.

On January 1, 1974, the plaintiff became eligible for a disability pension under the Agreement, and was paid the higher level of benefits, as provided by the Agreement. The plaintiff had applied for Social Security disability benefits, but was declared ineligible. However, on April 9, 1976, after appeals, Social Security awarded him unreduced disability benefits retroactive to February, 1974. The Social Security awarded the plaintiff a lump sum payment in the amount of $5,230.63 ($6,983.10 less an authorized attorney's fee of $1,745.77) as past due benefits for the period February 1974 through April 1976, and the sum of $302.00 a month thereafter. The plaintiff had been receiving from Goodrich for the period February 1974 through April 1976 the higher level of benefits provided in the Agreement for those not entitled to unreduced Social Security benefits.

Following the Social Security award to the plaintiff on April 9, 1976, Goodrich informed him that he had been overpaid the sum of $4,433.29 and that reimbursement in that amount should be made to Goodrich, either in a lump sum, by monthly payments, or by Goodrich's withholding future monthly disability payments. The plaintiff having resisted repayment, Goodrich advised him that commencing on May 1, 1976, for a period of twenty-five months, it would not make any monthly payments to him on the ground that his benefits had been prepaid for that period, but that at the expiration of the period it would resume making the monthly payments.

On July 22, 1976 the Union filed a written grievance with Goodrich, claiming that the withholding of plaintiff's pension payments was a violation of the Agreement. On July 27, 1976, Goodrich and the Union held a meeting concerning the grievance. On August 9, 1976, Goodrich denied the grievance in writing. The Union did not seek from Goodrich an agreement to proceed to arbitration. On April 21, 1976, the "Uniform Agreement" (collective bargaining agreement) between the company and the Union terminated, and the Union was out on strike from April 21, 1976 until September 6, 1976. On June 10, 1977, the plaintiff filed the complaint in this case, claiming that Goodrich was withholding his pension benefits in violation of the Agreement.

Article 15 of the Agreement provides:

*Appeals Procedure*

If any dispute . . . shall arise between the Company and any Employee, Pensioner, or former Employee who has retired during the life of this Agreement . . . such dispute, shall as the exclusive means of settlement be taken up as a grievance beginning with the step next preceding arbitration, and be thereafter handled, in accordance with the grievance Procedure provided for in the Uniform Agreement . . . *except that if any dispute arises during a period in which the Uniform Agreement* . . . [is] *not in effect,* such dispute shall as the exclusive means of settlement be referred by the Local Union President as a grievance to the Plant Manager in the case of any Plant outside Akron . . . and if such dispute is not settled by these individuals, *it may by agreement be referred to arbitration.* (Emphasis added).

Article 1(d) of the Agreement defines "Uniform Agreement" as follows:

"Uniform Agreement" shall mean the collective bargaining agreement dated May 31, 1973, between the Company, the International Union and the Local Unions, as may be amended or supplemented on any successor agreement.

All the events concerning the dispute between the plaintiff and Goodrich occurred during the period when the "Uniform Agreement" was not in effect, and the plaintiff's dispute with Goodrich was processed in accordance with the grievance procedure provided in the above quoted article of the Agreement.

The Agreement between the Union and Goodrich provided that in the event any dispute should arise between the company and the employee during a period when the collective bargaining agreement was not in effect, the exclusive method of settling the dispute should be a referral as a grievance by the local union president to the plant manager, and if such dispute is not settled by these two individuals, it may by agreement be referred to arbitration. No agreement was entered into between the Union and Goodrich to refer the plaintiff's grievance to arbitration. The issue is therefore presented, whether the plaintiff may now bring his grievance into this court, pursuant to § 301(a) of the Act.

It is the employer's position that the grievance procedure provided in the Agreement is exclusive, and that the law is well settled that where the bargaining agreement expressly provides a grievance procedure as the exclusive method of settling disputes between the company and one of its employees, there is no cause of action under § 301(a) of the Act. The plaintiff contends that the procedure provided in the Agreement for settling the dispute does not preclude him from having his grievance determined by this Court.

■ It appears well settled that an employee does not have a right of action against an employer pursuant to § 301(a) of the Act in connection with any dispute arising under a collective bargaining agreement which provides an exclusive method for determining the dispute. *Haynes v. United States Pipe & Foundry Company,* 362 F.2d 414 (5th Cir. 1966). *See, United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 580–87, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise*

*Wheel & Car Corporation*, 363 U.S. 593, 596–98, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Mine Workers of America, District No. 2 v. Barnes & Tucker Company*, 561 F.2d 1093, 1096–97 (3d Cir. 1977).

In *Haynes*, the Fifth Circuit affirmed the dismissal of an action brought pursuant to § 301 of the Act by an employee against his employer for wrongful discharge, where the collective bargaining agreement established a grievance procedure as the exclusive method for the settlement of disputes. The court in *Haynes* stated, 362 F.2d at 416, that § 203(d) of the Act

> contemplated that the method agreed upon by parties to collective bargaining agreements should be the means of settling such disputes. In suits under § 301(a), the Supreme Court construed this policy as requiring the courts to give full play to the means chosen by parties to a collective bargaining agreement for settlement of their differences.

In *Cady v. Twin Rivers Towing Company*, 486 F.2d 1335, 1337–38 (3d Cir. 1973), our Third Circuit stated:

> The Supreme Court has indicated that before an employee, who has submitted his claim to the contract grievance procedure, may maintain a cause of action against his employer he must offer proof that the union representing him breached its statutory duty of fair representation. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Such proof must be timely asserted. *Lomax v. Armstrong Cork Co.*, 433 F.2d 1277 (5th Cir. 1970). The infirmity in Cady's contention is his failure to allege or prove any facts with respect to this issue in a timely manner before the district court. Since Cady was notified of the need for such assertions by defendants' briefs filed with their motions for summary judgment and failed to plead or produce affidavits raising such issues, he is properly precluded from raising such issues on appeal. *Bogacki v. American Machine & Foundry Company*, 417 F.2d 400, 407 (3d Cir. 1969); *Crompton-Richmond Co., Inc.–Factors v. Smith*, 392 F.2d 577 (3d Cir. 1967); *Shafer v. Reo*

*Motors, Inc.*, 205 F.2d 685 (3d Cir. 1953). Absent a showing of breach of the Union's duty of fair representation, disposition of the claim pursuant to the grievance procedures of the contract is final. *Haynes v. United States Pipe & Foundry Co.*, 362 F.2d 414 (5th Cir. 1966).

■ The Agreement in this case provided an exclusive method for resolving this type of a dispute arising during a period in which the collective bargaining agreement was not in effect, and thus bars the plaintiff from proceeding with this action brought pursuant to § 301 of the Act.

■ The plaintiff does not contend that the Union breached its duty of fair representation, and the Union is not a party to this lawsuit. As a matter of fact, the parties have stipulated that the Union did not at any time breach its duty of fair representation. As pointed out in *Cady, supra*, absent a showing of a breach of the Union's duty of fair representation, disposition of a grievance pursuant to an exclusive method provided in the collective bargaining agreement is final. As the Supreme Court pointed out in *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), an employee who brings a suit against his employer and the Union under § 301 of the Act has the burden of showing not only a violation of the collective bargaining agreement, but also has the burden of demonstrating that his union breached its duty of fair representation.

In this case, the defendant filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and thus had the burden of demonstrating that there is no genuine issue of material fact. We find that there is no genuine issue of material fact. All the material facts were presented to this Court by stipulation, and the Court viewed the facts set forth in the stipulation in the light most favorable to the plaintiff, who was opposing the motion. Therefore, for the reasons set forth, the Court shall enter an order granting summary judgment to the defendant, Goodrich.