Albert MERCHANT, Plaintiff–Appellant,

v.

AMERICAN STEAMSHIP COMPANY, Defendant–Appellee.

No. 86–1448.

United States Court of Appeals, Sixth Circuit.

Argued June 22, 1987.

Decided Oct. 25, 1988.

D. Michael O'Bryan, argued, O'Bryan Law Center, Birmingham, Mich., for plaintiff-appellant.

Paul D. Galea, argued, Detroit, Mich., for defendant-appellee.

Before WELLFORD, MILBURN, and NELSON, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

Under federal maritime law, it has been held, a seaman who brings a personal injury suit against his employer pursuant to the Jones Act may not be discharged in retaliation for the suit. *Smith v. Atlas Off-Shore Boat Service, Inc.,* 653 F.2d 1057 (5th Cir.1981). The plaintiff in the case at bar is a seaman who brought a retaliatory discharge suit in admiralty after first presenting—but not pursuing—a grievance under a collective bargaining agreement by which he was covered. The district court concluded that the maritime law on which the plaintiff relied had been preempted by federal labor relations law developed under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), and the court dismissed the complaint because of the seaman's failure to exhaust his remedies under the collective bargaining agreement. Under the reasoning of *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), and *Atchison, T. & S.F. Ry. Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987)—decisions of which the district court did not have the benefit in the present case—it seems to all three members of the panel that there was no preemption here. One member of the panel would nonetheless affirm the dismissal of the complaint, believing that where a seaman is covered by an equitable collective bargaining agreement that protects him against being discharged without good cause and provides a mandatory grievance procedure through which his rights may be

vindicated, maritime law itself requires exhaustion of the contractual remedy. The majority of the panel find no such requirement in the maritime law, and the judgment of the district court will therefore be reversed.

I

The plaintiff seaman, Albert Merchant, was injured in 1981 while working on a Great Lakes ore carrier operated by a wholly owned subsidiary of defendant American Steamship Company. In January of 1982 Mr. Merchant settled his personal injury claim and executed a release. Three months later, contending that the release was invalid, he brought a personal injury suit against American Steamship under the Jones Act, 46 U.S.C. App. § 688.

When the case went to trial, in September of 1985, Mr. Merchant presented evidence showing, among other things, that in April of 1985 the employer had fired him from his job as a porter. At the close of his proofs Mr. Merchant moved to conform his complaint to the evidence by adding a claim for wrongful discharge. The district court refused to allow the amendment, viewing it as an eleventh hour attempt to change the theory of the case without any warning to the defendant. The jury then returned a verdict against Mr. Merchant on his Jones Act claim, finding that the release he had executed was valid and binding. The court entered judgment accordingly.

Mr. Merchant then instituted the present admiralty case against American Steamship. His complaint alleged that Mr. Merchant had "experienced undue harrassment [*sic*]" as a result of filing the Jones Act case, which harassment was said to have culminated in a retaliatory termination of his employment. The complaint made no mention of any breach of a collective bargaining agreement.

American Steamship moved for dismissal of the complaint on the ground that the plaintiff had failed to exhaust his contrac-

tual remedies under a labor agreement between American Steamship and his collective bargaining representative, the Seafarers' International Union. After oral argument on the motion, the court made a bench ruling dismissing the retaliatory discharge claim on preemption grounds and giving Mr. Merchant leave to file an amended complaint. An amended complaint omitting the retaliatory discharge claim was filed thereafter, but it was dismissed under the doctrine of *res judicata.*[1] This appeal followed. Mr. Merchant does not argue on appeal that the amended complaint ought not to have been dismissed, but he contends vigorously that he ought to have been allowed to go forward on his retaliatory discharge claim.

II

As we read the collective bargaining agreement by which Mr. Merchant was covered, the agreement was intended to protect him against any wrongful discharge and to provide him a speedy and effective remedy in the event of such a discharge.

Article I of the agreement establishes a "Great Lakes Seamen's Job Security Program" designed, according to an introductory paragraph, "to guarantee every seaman on the company's vessels … his job with the company for as long as he wishes to keep that job, barring discharge for good cause." Although the text of the Program itself deals primarily with seniority and does not explicitly prohibit discharges for other than good cause, it does provide that seniority rights shall be lost by reason of "discharge for cause," among other things. And "[a]s a general rule," according to Article III, Section 6 of the agreement, "no crewmember shall be fired by any Junior Mate or Engineer or Steward. The Master or Chief Engineer should be the only person discharging a crewmember for cause." To suppose that the agreement leaves lesser luminaries free to dis-

---

**1.** No question has ever been raised as to whether the retaliatory discharge claim might also be barred by *res judicata.*

charge crewmembers without cause would be unwarranted, in our view.

In any event, a handwritten grievance signed by Mr. Merchant on April 15, 1985, indicates that Mr. Merchant was fired by the Chief Engineer of his vessel, a Mr. Crane, and not by a mere Junior Mate or Engineer. Mr. Merchant's grievance—which was evidently prepared without benefit of counsel—did not suggest that the discharge was in retaliation for the Jones Act suit filed three years earlier. Mr. Merchant said, rather, that "Chief Earnest Crane fired me for not making Bed up...." (Although Mr. Merchant had been warned about this before—he was "wrote up twice Last year for same thing," according to the grievance—Merchant thought the blankets furnished him were "to[o] Big for bed" and were "not specified for the bed." He added that "they have regular ones for officers.")

Article I of the collective bargaining agreement contemplates that a seaman claiming a deprivation of rights under that article may petition a joint labor-management appeals board for redress, after initial referral of the question to a Director of Seniority appointed by the board. Section 3 of Article III, captioned "Grievance Procedure," provides that where an employee has a complaint not covered by the Job Security Program in Article I, he shall first take it up with a union representative who is to attempt settlement. If a Section 3 complaint is not settled initially, it "shall be adjusted" under a multi-step grievance procedure that culminates in arbitration. The decision of the arbitrator "shall be final and binding upon both parties."

Mr. Merchant discussed his complaint with Seniority Director Joe Sigler, who called Personnel Assistant Donald Pfohl at American Steamship. Mr. Pfohl's response, as reflected in a letter he sent to the Seafarers' International Union under date of June 5, 1985, was not very sympathetic:

"Mr. Merchant's work on cleaning rooms has been a long standing problem over the years. It seems all of our efforts to correct Mr. Merchant's performance have gone for nought. During the 1984 season Mr. Merchant received two written warnings regarding deficiencies in cleaning rooms. These warnings were confered [sic] upon and validated by the Appeals Board.

In the spring of the 1985 season, Mr. Merchant was given another warning regarding his performance on cleaning rooms. Mr. Merchant told his supervisor that he may as well dismiss him. We took this statement to be tantamount to quitting. We feel this is giving Mr. Merchant the benefit of a clean record. If he insists, we will consider him discharged for cause and adjust our records to reflect same."

This letter to the union marked the last step taken by anyone under the collective bargaining agreement. It is clear that Mr. Merchant's remedies under the collective bargaining agreement were not exhausted. It is not entirely clear to us from the language of the agreement that Mr. Merchant's remedy was that provided by Article III, as opposed to Article I, but counsel for both parties have proceeded on the assumption that the contract remedy lies under Article III. Mr. Merchant's lawyer told the district court that the grievance "goes to an arbitrator" under the grievance procedure, and Mr. Merchant has not departed from that position here. (He argues, rather, that "[w]hatever the collective bargaining agreement provides for is immaterial....") We shall assume, therefore, as the parties have done, that the contract remedy is that prescribed by Article III.[2]

---

**2.** Exhaustion of the grievance procedure established in Article III for complaints not covered by Article I is mandatory: the grievance "shall" be adjusted by steps culminating in final and binding arbitration. The right to petition the appeals board on grievances arising under Article I seems to be merely permissive, on the other hand, and if contractual grievance procedures are not intended to provide an exclusive remedy, "then a suit for breach of contract will normally be heard even though such procedures have not been exhausted." *Vaca v. Sipes,* 386 U.S. 171, 184 n. 9, 87 S.Ct. 903, 913 n. 9, 17 L.Ed.2d 842 (1967), citing *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 657–58, 85 S.Ct. 614,

## III

If the collective bargaining agreement prohibits the employer from discharging a seaman for other than good cause, it would obviously be a breach of the agreement to discharge a seaman in retaliation for his having brought a personal injury suit under the Jones Act. And if *Smith v. Atlas Off–Shore Boat Service, Inc., supra*, 653 F.2d 1057, is good law, a retaliatory discharge would constitute a maritime tort even if the collective bargaining agreement itself did not prohibit discharge other than for cause, or even if there were no collective bargaining agreement at all. It is not self-evident that a seaman who claims to have been damaged by conduct constituting both a tort and a breach of contract may not waive the contract claim and bring suit solely for the tort.

The common law has recognized for centuries that a plaintiff may waive a tort and sue in assumpsit,[3] and admiralty law, which has always shown particular solicitude for the seaman, presumably would not bar the converse procedure without some good reason for doing so. "[I]t is a settled canon of maritime jurisprudence," after all, that "it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 281–82, 100 S.Ct. 1673, 1677, 64 L.Ed.2d 284 (1980) (citations omitted).

Are there any "established and inflexible rules" requiring that the tort remedy be withheld when the seaman has an unexhausted contract claim as well? *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), on which American Steamship places heavy reliance, does not so hold. The plaintiff in that case—who was not a seaman—asserted a claim for severance pay due under the terms of a collective bargaining agreement. It was clear that his suit was "simply on

the contract," *id.* at 657, 85 S.Ct. at 618, and there was no other potential basis for liability. In explaining why federal labor law required Mr. Maddox to exhaust his contract remedies, however, the Supreme Court did articulate a number of policy reasons that might well justify making the contract remedy the exclusive remedy, even where the worker would not be without a remedy in the absence of a contractual provision giving him one. And in *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985), the Supreme Court refused to allow an employee who was covered by a collective bargaining agreement to "elevate form over substance and ... evade the [exhaustion of contract remedies] requirements of § 301 by relabeling ... contract claims as claims for tortious breach of contract."

The independent basis of the "tort" alleged in *Lueck* (failure to exercise good faith in carrying out a contractual obligation) was obviously thin, but that was not the case in *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045 (7th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984). *Jackson* involved a railroad worker who was discharged after bringing a personal injury action under the Federal Employers Liability Act; without exhausting his administrative grievance procedures, he sought to recover damages for the discharge on the ground that it was retaliatory. Retaliatory or not, the court of appeals declared that "a 'retaliatory discharge' is one variety of a 'wrongful discharge' claim," and the right not to be discharged wrongfully "grows out of the collective bargaining agreement." *Id.* at 1049. The employee's retaliatory discharge claim was "identical to the claim he would have made, had he pursued the grievance through administrative channels," the court said, and the federal regulatory interest was therefore too great to let him seek relief through an alternate channel. *Id.* at 1054.

618–19, 13 L.Ed.2d 580 (1965), and 6A Corbin, *Contracts* § 1236 (1962).

**3.** The reader may remember the whimsically Wordsworthian lines of the lawyer who wrote,

some years ago, "Thoughts much too deep for tears subdue the court/When I *assumpsit* bring and, god-like, waive a tort."

As an exercise in formal logic, this chain of reasoning may lack elegance. As a matter of policy, however, for reasons to be discussed presently, the result reached is by no means indefensible. A number of Seventh Circuit decisions have reached comparable results; see, *e.g.*, *Oglesby v. RCA Corp.*, 752 F.2d 272 (7th Cir.1985); *Vantine v. Elkhart Brass Manufacturing Co.*, 762 F.2d 511 (7th Cir.1985); and *Graf v. Elgin, Joliet and Eastern Railway Co.*, 790 F.2d 1341 (7th Cir.1986). Compare *Johnson v. Hussmann Corp.*, 805 F.2d 795 (8th Cir.1986).

The reasoning employed in *Jackson* has now been repudiated by the Supreme Court. *Lingle v. Norge Division of Magic Chef, Inc.*, *supra*, 486 U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410. Reversing a Seventh Circuit decision which employed an approach not unlike that followed in *Jackson*,[4] the Supreme Court held in *Lingle* that a state tort action arising out of the retaliatory discharge of an employee covered by a collective bargaining agreement was not preempted by § 301 of the Labor Management Relations Act and could be prosecuted without reference to the grievance machinery established by the collective bargaining agreement.

The Supreme Court's opinion in *Lingle* acknowledged that adjudication of the tort claim "might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause." —— U.S. at ——, 108 S.Ct. at 1883, 100 L.Ed.2d at 420. But the Court noted that the resolution of these questions—questions such as the employee's performance on the job and the employer's motivation in firing him—would not require a court to interpret any term of a collective bargaining agreement. —— U.S. at ——, 108 S.Ct. at 1882, 100 L.Ed.2d at 419. "[T]he mere fact that a broad

contractual protection against ... discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or contours of the state law violation dependent upon the terms of the private contract," the Court said, and "an application of state law is preempted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." —— U.S. at ——, 108 S.Ct. at 1885, 100 L.Ed.2d at 423 (footnote omitted).[5]

In the case at bar, similarly, the factual question of whether plaintiff Merchant was fired because of his deficiencies as a bedmaker or because he had once brought suit under the Jones Act is a question that can be decided without interpreting the collective bargaining agreement. If Mr. Merchant was in fact fired for the latter reason, therefore, and if the maritime law prohibits a seaman from being discharged for such a reason, *Lingle* points to the conclusion that the maritime law applicable here has not been preempted by § 301.

There are several reasons why this conclusion might not necessarily be compelled by *Lingle*. The body of tort law held not to be preempted in *Lingle* was state law, for one thing, while the body of tort law on which Mr. Merchant relies is federal law. Such a distinction can sometimes be significant, see *City of Milwaukee v. Illinois* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), but it probably is not significant here as far as the question of preemption itself is concerned. (The question of our power to shape the content of the applicable tort law is another matter, of course.)

In *Atchison, T. & S.F. Ry. Co. v. Buell*, *supra*, 480 U.S. 557, 107 S.Ct. 1410, a railroad carman who was covered by the Federal Employers' Liability Act, 45 U.S.C. §§ 51 *et seq.*, claimed that the conduct of a

---

4. "We have consistently held that claims of retaliatory discharge brought by a worker who is covered by a collective bargaining agreement are actually claims for wrongful discharge under the collective bargaining agreement." *Lingle*, 823 F.2d 1031, 1041 (7th Cir.1987) (*en banc*).

5. We recently followed *Lingle* in holding that neither a Michigan retaliatory discharge claim nor a Michigan Handicappers' Civil Rights Act claim was preempted by § 301. *Smolarek v. Chrysler Corp.*, 858 F.2d 1165 (6th Cir.1988). Neither claim, we concluded, required interpretation of the collective bargaining agreement by which the claimant was covered.

supervisor caused him to suffer an emotional breakdown. The defendant railroad asserted that the plaintiff's sole remedy lay in the binding arbitration procedures established under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* The district court agreed, but the Supreme Court did not; it held that if the plaintiff would otherwise be entitled to recover damages in a tort action, such an action was not precluded by the Railway Labor Act. The fact that the putative tort claim arose under federal law rather than under state law did not affect the Court's preemption analysis in *Buell,* and we doubt that it would do so in the case now before us.

The federal tort claim asserted by Mr. Buell was statutory, to be sure, while that asserted by Mr. Merchant is not. (Although Mr. Merchant's admiralty suit may have been brought to "vindicate" his rights under the Jones Act, it was not Congress that created the cause of action for retaliatory discharge; such a claim is a creature of the courts, not the legislature.) Again, there are cases where such a circumstance can be significant—and this could be one of them, as far as the scope of Mr. Merchant's remedy is concerned—but we doubt that the non-statutory character of Mr. Merchant's maritime retaliatory discharge claim is significant to the preemption analysis in this case, except insofar as it may make preemption even harder to establish than it otherwise would be.

The maritime character of the claim could affect the preemption analysis, on the other hand, as is shown by Judge Newman's scholarly opinion in *Matter of Oswe-*

*go Barge Corp.,* 664 F.2d 327 (2d Cir.1981). That opinion points out that although a "strict" test is used in determining whether non-maritime federal common law has been preempted (see *City of Milwaukee v. Illinois, supra,* 451 U.S. 304, 101 S.Ct. 1784, suggesting that federal common law is preempted as to every problem that Congress has "addressed" in legislation), "the federal judiciary has a more expansive role to play in the development of maritime law than in the development of non-maritime federal common law." 664 F.2d at 335–36 (citations omitted). "In recognizing a substantial law-creating function for federal courts in maritime law," Judge Newman went on to say, "the Supreme Court appears to have applied the presumption of statutory preemption somewhat less forcefully to judge-made maritime law than to non-maritime federal common law." *Id.* at 336.

In addition to recognizing that the judge-made tort law Mr. Merchant seeks to invoke is maritime law rather than common law,[6] however, we must recognize that only by a fairly considerable stretch of the imagination can Congress be said to have "addressed" the subject of retaliatory discharges when it passed the Labor Management Relations Act (or Taft–Hartley Act, as it was commonly called,) in 1947. Under the Railway Labor Act, at least, as the Supreme Court had established a few years before the Taft–Hartley Act was passed by the 80th Congress, a trainman was not required to exhaust the administrative remedies granted him by the Railway Labor

---

**6.** Here we use the latter term to signify judge-made law of the sort which, when the British began to colonize America, was applied by common law courts, as opposed to courts of admiralty. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), teaches, of course, that there is "no federal general common law." There are, however, certain narrow areas where federal courts hold that they have been given jurisdiction to develop "common law." *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640–41, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981). One such area is the field of labor management relations, where § 301 of the Labor Management Relations Act is said to confer law-making jurisdiction. *Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Another is admiralty, where judges have been "making" substantive law for centuries, but often have called it maritime law and not common law. (Courts of admiralty were not common law courts, originally, and when the English court system was reformed in the 19th century, a division of the High Court called the Probate, Divorce and Admiralty Division was created to deal with three areas of law not within the historic jurisdiction of the common law courts. It may have been A.P. Herbert who described the tripartite jurisdiction of this "uncommon law" part of the High Court as jurisdiction over "wrecks of wills, marriages and ships.")

Act before bringing suit for wrongful discharge. *Moore v. Illinois Central Railroad Co.*, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941). It was not until a quarter of a century after the enactment of § 301 that the Supreme Court overruled *Moore* in *Andrews v. Louisville and Nashville RR. Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). If Congress intended, in passing the Taft–Hartley Act, to adopt a different rule for industries not governed by the Railway Labor Act, Congress was singularly reticent about making its intent clear in the statute. Given that fact, and given the logic of the Supreme Court's unanimous opinions in *Lingle* and *Buell*, it does not seem to us that Congress can fairly be said to have preempted the maritime law as to retaliatory discharges.

*Cady v. Twin Rivers Towing Co.*, 486 F.2d 1335 (3d Cir.1973), on which the district court relied heavily in granting the employer's motion to dismiss Mr. Merchant's complaint in the case at bar, does not seem to compel the conclusion that a seaman's wrongful discharge claim is preempted under § 301 where the discharge is claimed to have been in retaliation for an exercise of the seaman's rights under the Jones Act. *Cady* was a wrongful discharge case, to be sure, but the discharge was not claimed to have been retaliatory. Mr. Cady was suspended and fired for having consumed alcoholic beverages on duty, not for having sued his employer under the Jones Act. The Jones Act constitutes a prominent part of the maritime law, but a right to drink on the job does not. The only ground on which a discharge for drinking might be held wrongful, as far as we can see, would be that drinking did not constitute a ground for discharge under the governing collective bargaining agreement. A discharge for suing under the Jones Act, on the other hand, might well be tortious under general maritime law—and in light of *Lingle* and *Buell*, we hold that if Mr. Merchant has a maritime law claim for retaliatory discharge, it has not been preempted under § 301 of the Labor Management Relations Act.

## IV

But what does the general maritime law actually provide, under factual circumstances such as those presented here? On these facts, would maritime law itself require exhaustion of contract remedies? Judges Wellford and Milburn believe that the maritime law contains no exhaustion requirement.

As the Fifth Circuit has recognized in *Smith v. Atlas–Offshore Boat Service, Inc.*, 653 F.2d 1057 (5th Cir.1981), a "claim for retaliatory discharge ... may be tried to the jury ... even in the absence of diversity." 653 F.2d at 1064. Were an exhaustion requirement to be imposed in a maritime retaliatory discharge case, a nonunion seaman might be allowed to present his claim to a jury, while a union seaman working for the same employer pursuant to a collective bargaining agreement would be forced to proceed under the contract. Thus, two seaman working for the same employer, injured in the same accident, could be discharged for bringing Jones Act personal injury actions, and the imposition of an exhaustion requirement could allow the nonunion seaman to proceed before a jury with a retaliatory discharge action, but not the union seaman. The latter, rather, would be required to exhaust his contractual remedies under the collective bargaining agreement. The panel majority see no justification for this disparate treatment of labor union members.

Moreover, an exhaustion requirement would limit the types of damages available to a union seaman bringing a retaliatory discharge claim. As a retaliatory discharge complaint "states an action in tort rather than contract, damages are not limited by contract principles." *Wiskotoni v. Michigan National Bank–West*, 716 F.2d 378, 388 (6th Cir.1983). Once a seaman establishes retaliatory discharge, as the panel majority see it, he or she is entitled to compensatory damages for the economic loss caused by the wrongful discharge. *Smith*, 653 F.2d at 1064. Additionally, "the discharged seaman may be entitled to recover compensatory damages for mental anguish that he may suffer as a result of

the wrongful discharge." *Id.* Under an exhaustion requirement, however, a union seaman would not be entitled to the above damages, but would only be entitled to the damages and/or remedies provided by the collective bargaining agreement governing his employment. Thus, there would be an irrational distinction between union and nonunion seamen.

Simply stated, the panel majority are of the view that a seaman's tort action for retaliatory discharge exists independent of any collective bargaining agreement. As we have concluded that a claim for retaliatory discharge is not preempted by section 301 of the Labor Management Relations Act, the majority think an exhaustion of contractual remedies requirement would be both incongruous and unfair. The Supreme Court acknowledged in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), that union employees of land-based employers may bring retaliatory discharge actions based on state law without first exhausting contract remedies, and the majority see no reason to treat maritime workers any differently.

The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings.

DAVID A. NELSON, Circuit Judge, dissenting in part.

That the maritime law has not been "preempted" by the federal labor law hardly means that it cannot be influenced by it. The substantial law-creating function that federal admiralty courts have exercised for almost two centuries did not suddenly disappear once those courts had created the maritime tort of retaliatory discharge. No comparable law-creating function was vested in the federal courts in the *Lingle* case, because the tort law governing the retaliatory discharge asserted by the plaintiff there was Illinois law—and when federal courts apply state law, they must take that law as they find it. *Trident Center v. Connecticut General Life Insurance Co.*, 847 F.2d 564 (9th Cir.1988). The action brought against the Atchison, Topeka and Santa Fe Railway Company in the *Buell* case, similarly, was a statutory action the parameters of which were set, in theory, by Congress; but Mr. Merchant's case against the American Steamship Company is brought under non-statutory general maritime law, as the complaint alleges, and Congress having remained silent on this matter, the parameters of a maritime retaliatory discharge case must be determined by the courts of admiralty. As long as the legitimate interests of the seamen who are its wards do not dictate otherwise, I see no reason why a court of admiralty should not make reasonable efforts to harmonize maritime law with the general federal law.[7]

There can be no question, as *Maddox* and its progeny make clear, that general federal labor law requires the exhaustion of mandatory grievance procedures established by representatives of labor and management in the collective bargaining process. This is a relatively new rule; both on land and at sea, collective bargaining agreements themselves are relatively new. Two hundred years ago, when the Framers adopted a Constitution stating that the federal judicial power shall extend "to all cases of admiralty and maritime jurisdiction," the individual seaman had relatively little economic power. The fairness of the treatment accorded a seaman after he had signed on for a voyage depended largely on the benevolence of his employer, as fortified by the benevolence of the courts of admiralty. But that is no longer true; seamen are now represented by powerful labor unions that have shown themselves capable of negotiating comprehensive labor agreements giving seamen rights that would have been undreamed of in

---

**7.** State courts can expound state common law in a way federal courts cannot, of course, and if the harmonizing of federal maritime law with federal labor law creates an incongruity with state tort law, state courts can eliminate the incongruity, if they wish, by conforming the state rule to the federal rule. Federal courts may not require state courts to do so, but I see nothing unfair or incongruous in federal courts declining to conform federal maritime law to state tort law where state courts choose to march to their own drummer.

years gone by. Mr. Merchant was the beneficiary of just such an agreement.

New occasions, as the old hymn reminds us, teach new duties. Maritime workers are now employed under collective bargaining agreements no different, in character, from those that regulate employment in a host of land-based industries, and I see no reason why maritime courts should ignore that fact. See *Gardiner v. Sea–Land Service, Inc.*, 786 F.2d 943, 949 (9th Cir.), *cert. denied*, 479 U.S. 924, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986), where the court held that although maritime law establishing the seaman's right to maintenance has not been preempted by federal labor legislation, the rate of maintenance may be subject to the negotiation process, and the rate negotiated by his union may be binding on the seaman as a matter of maritime law.

In the case at bar, as in *Gardiner*, "there has been no allegation that the collective bargaining agreement as a whole is unfair or inadequate." See *Gardiner*, 786 F.2d at 949. There has been no allegation here that the collective bargaining agreement does not prohibit retaliatory discharges, and no allegation that the agreement does not provide an effective remedy for any such discharge. If the remedy fashioned by an admiralty court in the absence of a collective bargaining agreement might be more expansive than that provided by the contractual grievance procedure that is before us in this case, I cannot say—and I do not understand Mr. Merchant to argue—that the contract remedy, viewed in the context of the other benefits obtained in the give and take of the bargaining process, is not fair and reasonable. I note, finally, that Mr. Merchant has never suggested that his union was at fault in not pursuing the grievance to conclusion.

Against this background I do not think that it would ill become "the humane and liberal character of proceedings in admiralty" to hold that Mr. Merchant's maritime law remedy for a retaliatory discharge is the remedy negotiated for him by his un-

ion.[8] I would interpret the maritime law as requiring Mr. Merchant to exhaust that remedy, just as the general labor law would require a worker in a steel mill or automobile plant to exhaust his or her contractual remedies. Mr. Merchant's contract remedy admittedly not having been exhausted, I would affirm the dismissal of the complaint.

---

**8.** The same rule would apply to any other member of the collective bargaining unit, naturally, whether a member of the union or not; all seamen in the unit would be treated exactly alike regardless of union membership.