

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-6-1996

# Orlando v. Interstate Container

Precedential or Non-Precedential:

Docket 96-1085

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Orlando v. Interstate Container" (1996). *1996 Decisions.* Paper 23.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/23

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 96-1085
_____

JOSEPH ORLANDO,
                    Appellee
        v.

INTERSTATE CONTAINER CORPORATION,
                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 95-cv-01075)
_____

Argued September 11, 1996

Before:  COWEN, LEWIS, and WEIS, Circuit Judges

Filed November 6, 1996
_____

Stephen V. Yarnell, Esquire
Brian Kirby, Esquire (ARGUED)
Joseph C. Ragaglia, Esquire
Harvey, Pennington, Herting & Renneisen, LTD.
Eleven Penn Center
1835 Market Street, 29th Floor
Philadelphia, PA  19103

Attorneys for Appellant


Russell W. Scianna, Esquire (ARGUED)
Russell W. Scianna, P.C.
300 Kenhorst Boulevard
Post Office Box 7622
Reading, PA  19603-7622

Attorney for Appellee

_____


OPINION OF THE COURT
_____


WEIS, Circuit Judge.

In this labor relations case, the district court concluded that, in the absence of appropriate language in a collective bargaining agreement, an arbitration award in a grievance proceeding was not final. We agree and will affirm.

Plaintiff, a long-time employee of Interstate Container Corporation, underwent heart bypass surgery in 1992 and collected benefits for several months, as provided by a collective bargaining agreement. In January 1993, his application for a disability pension was approved by the Paper Industry Union-Management Fund. He also applied for and received disability insurance benefits from the Social Security Administration.

As a result of these developments, Interstate treated plaintiff as a retired employee and terminated his medical insurance as of January 19, 1993. When his physical condition improved, plaintiff applied for reinstatement of employment with Interstate. When the Company denied his request, his union filed grievances on his behalf. They were processed through the steps set out in the collective bargaining agreement and culminated in an arbitrator's decision favorable to Interstate.

Plaintiff subsequently brought a breach of contract suit in state court and Interstate removed the action to federal court. The district judge granted partial summary judgment to Interstate, but held that on two breach of contract counts, the case would have to proceed because the grievance arbitration was not final and binding. The district court then certified the issue as a controlling question of law under 28 U.S.C. § 1292(b) and we granted leave to appeal.

Article VII of the collective bargaining agreement directs that "grievances shall be processed in the following manner" and lays out a four-step procedure beginning with the participation of a supervisor and working up through the plant manager and general manager. Step 4 provides that if the dispute has not been settled at that point, the union can give the company "notice of its intention to submit the grievance to arbitration" and request the American Arbitration Association to supply a list of arbitrators. The arbitrators' authority is limited to "interpreting and/or applying the language of the existing Labor Agreement"; they cannot "amend, modify, or alter in any manner whatsoever, any provision of the Agreement." The words "final" or "binding" do not appear in Article VII.

The preface to the entire collective bargaining agreement includes the following statement: "The terms herein stated are the exclusive terms for

collective bargaining between the respective parties. It is mutually agreed by
the parties that all claims under prior contracts shall be considered null and
void with the effective date of this Agreement."

The district court first noted the absence of such terms as "binding" or
"final" in Article VII and then looked to the collective bargaining agreement
in its entirety to determine whether the parties intended to preclude a suit
under section 301 of the Labor Management Relations Act, 29 U.S.C. §
185(a). Although the company relied on the preface to the collective
bargaining agreement for its assertion that arbitration was exclusive and
binding, the court disagreed, finding that the paragraph "does not compel the
conclusion that the arbitration provision . . . is final and binding." Finally,
the district judge pointed out that although "the grievance procedures are
mandatory [that] does not necessarily mean they are final and binding."

Although the district court did not articulate the controlling question of
law that it certified under 28 U.S.C. § 1292(b), from the briefs and arguments
presented to us, we construe the question to be whether an arbitration award
precludes review on the merits under section 301 when the collective
bargaining agreement does not provide that arbitration is the final, binding,
or exclusive means of resolving the dispute. The answer to that question
requires consideration of several cross-currents in labor law.

## I.

National labor policy favors access to a judicial forum to resolve labor
disputes. Section 301 provides that "suits for violations of contracts between
an employer and a labor organization . . . may be brought in any district court
of the United States." 29 U.S.C. § 185(a).

Although section 301 facially appears to be only a jurisdictional
statute, it has been construed broadly to establish a cause of action as well.
See Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456 (1957).
"Section 301 contemplates suits by and against individual employees as well
as between unions and employers . . . § 301 suits encompass those seeking to
vindicate `uniquely personal' rights of employees such as wages, hours,
overtime pay, and wrongful discharge." Hines v. Anchor Motor Freight, Inc.,
424 U.S. 554, 562 (1976); Smith v. Evening News Ass'n, 371 U.S. 195, 198–
200 (1962).

In Groves v. Ring Screw Works, 498 U.S. 168, 173 (1990), the
Supreme Court commented on the "strong federal policy favoring judicial

enforcement of collective-bargaining agreements."  The Court observed that "there is a strong presumption that favors access to a neutral forum for the peaceful resolution of disputes."  Id.  In that case, the alternative to resolution of a grievance by a section 301 action was "economic warfare" between the parties.  In those circumstances, resort to the courts was preferable.

In Clayton v. International Union Automobile Workers, 451 U.S. 679 (1981), the Court recognized the importance of following contractually-mandated grievance procedures.  Thus, before resorting to a section 301 suit, an employee "must attempt to exhaust any exclusive grievance and arbitration procedures established by [a collective bargaining] agreement."  Id. at 681.  The Court observed that it was important "to protect the integrity of the collective-bargaining process and to further that aspect of national labor policy that encourages private rather than judicial resolution of disputes arising over the interpretation and application of collective-bargaining agreements."  Id. at 687.

Yet another consideration enters into the picture.  In section 203(d) of the Labor Management Relations Act, 29 U.S.C. § 173(d), Congress emphasized that:  "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement."  Commenting on this admonition in United Steelworkers v. American Mfg. Co., 363 U.S. 564, 566 (1960), the Court noted that the policy "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play."  Consequently, courts "should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their dispute."  Hines, 424 U.S. at 563.

Arbitration, however, is a question of contract and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).  Finally, where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that it should apply "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  Id. at 582-83.  The question of the arbitrability of an issue is ordinarily for the court, but once arbitration is found to be applicable, the court should not address the

merits of the grievance.  AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649 (1986).

From this brief review of these familiar cases in labor law, we derive the following policies.  Section 301 suits provide a judicial remedy for violations of a collective bargaining agreement.  Hines, 424 U.S. at 562. Exhaustion of collective bargaining grievance procedures is encouraged as a prerequisite to a section 301 suit.  Clayton, 451 U.S. at 681; Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965).  Collective bargaining agreement grievance provisions may give rise to a presumption of arbitrability.  AT&T Technologies, 475 U.S. at 650.  If the parties agree that they may not institute civil suits and that the grievance procedures are final, those provisions will be enforced.  "[P]lenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final."  United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960).

                                        II.
Reconciling these sometimes conflicting policies is the task presented in this case.  The parties do not dispute that the grievance is arbitrable, that arbitration is mandatory, and that it has resulted in an award.  The issue is whether the award is "final" in the sense that the courts may not rejudicate the grievance.  Preliminarily, we agree with the district court's view that the preface to the collective bargaining agreement does not govern the issue here. The quoted paragraph is simply a standard integration clause.

It is important to distinguish between terms sometimes used interchangeably in this field.  Arbitration may be mandatory in the sense that the parties are required to use that procedure.  Although appellate rulings have used the word "exclusive," they do not govern the issue of whether the arbitration awards are "final" in the sense that they preclude resort to a section 301 suit on the merits, but rather the opinions refer to the requirement that the grievance procedures be exhausted before filing suit.  See, e.g., Clayton, 451 U.S. at 681; Maddox, 379 U.S. at 652.

Extrapolating from the general principles, we conclude that because the court must determine the duty to arbitrate from an interpretation of the collective bargaining agreement, it also has the task of determining the dispositive effect to be given to an award -- again, by construing the contract.

Although a presumption in favor of arbitrability exists, that procedure may not be imposed upon the parties except by agreement. A contract that is silent on the method of resolving grievances cannot be said to require arbitration, despite the policy that favors that procedure. Warrior & Gulf Navigation, 363 U.S. at 582.

In this case, the employer argues that because the contract makes arbitration mandatory, it must necessarily be final as well. That argument finds support in the policy favoring arbitration as a means of resolving disputes, but fails to meet the requirement of authorization by agreement of the parties. It is one thing to say that the collective bargaining agreement may be liberally construed to give an expansive definition to the subject matter of arbitration, but quite another to interpret the contract to impose finality on all grievances.

Imposing finality deprives a party of the right to present the merits of an arbitration award for review by a court. The opportunity to seek correction of an allegedly incorrect resolution of a grievance is a valuable right and not one to be denied cavalierly. In that context, the presumption of arbitrability cannot bear the weight the employer attributes to it. It cannot create finality in the arbitration process when the collective bargaining agreement is silent on the point. In short, the lack of a provision for finality or exclusivity does not overcome the presumption of access to the courts for review on the merits.

Our ruling in this respect is consistent with the policy of recognizing the compulsory nature of arbitration required by collective bargaining agreements. Mandatory arbitration prior to resort to a court is a different concept from mandatory arbitration precluding resort to a court. We do not discourage, but continue to endorse, the submission of grievances to arbitration. What we do decline to recognize is an expansive interpretation of the dispositive effect of arbitration when the collective bargaining agreement provides no basis for such a construction.

The parties have not cited any appellate cases directly on point, nor has our research uncovered any. Although Groves speaks of the strong presumption in favor of access to a neutral forum, that case is not precisely applicable because the alternative was a strike, a course of action that the

Court could not favor.  To the same effect, see Dickeson v. DAW Forest Prods. Co., 827 F.2d 627 (9th Cir. 1987) and Associated Gen. Contractors v. Illinois Conference of Teamsters, 486 F.2d 972 (7th Cir. 1973).

Interstate cites Communications Workers v. AT&T, 40 F.3d 426 (D.C. Cir. 1994) as supporting its position.  However, the issue in that case was whether arbitration was mandatory, not whether it was final.  The Court read the collective bargaining provision as requiring mandatory arbitration.  Although the opinion said, in dictum, that the grievance procedure was final, it did not quote or cite the applicable language in the collective bargaining agreement.  That case, therefore, is unhelpful.

Interstate also refers to district court decisions allegedly demonstrating that courts will not allow parties to "relitigate" arbitrated claims, even in the absence of a "finality clause" in the collective bargaining agreement.  Those cases do not help Interstate, but simply present examples of wording in collective bargaining agreements establishing finality -- language that is lacking here.  See, e.g, Sear v. Cadillac Auto Co., 501 F. Supp. 1350 (D. Mass. 1980) aff'd 654 F.2d 4 (1st Cir. 1981) (agreement contained finality clause); Frame v. B.F. Goodrich Co., 453 F. Supp. 63 (E.D. Pa. 1978) (agreement provided that the specified grievance procedure was the "exclusive" method of resolving all disputes); Los Angeles Newspaper Guild v. Hearst Corp., 352 F. Supp. 1382 (C.D. Cal. 1973) aff'd 504 F.2d 636 (9th Cir. 1974) (agreement stated that arbitrator's decision was "final").

We decline to consider an unpublished opinion of the Court of Appeals for the Sixth Circuit, McInnes v. John Hancock Mut. Life Ins. Co., 53 F.3d 331 (6th Cir. 1995) (table), also cited by Interstate.  That Court's rules make it clear that the opinion has no precedential value.  Moreover, even if we were to follow that case, we note that the Court did not analyze contractual language or the issue here, but rather accepted the district court's interpretation of the collective bargaining agreement without discussion.

Our decision in Cady v. Twin Rivers Towing Co., 486 F.2d 1335 (3d Cir. 1973) does not compel us to reach a different result.  In that case, a seaman, who declined to pursue his grievance through arbitration, sought damages in the district court under section 301.  We held that his suit was barred because he failed to complete the "binding grievance procedures" laid out in his collective bargaining agreement and failed to prove that his union had breached its duty of fair representation.  Id. at 1338-39.

Here, the parties rely solely on the wording of the contract for their positions, without any evidence of an established bargaining history or

course of conduct to support their interpretations.  We do not rely solely on
the absence of "talismanic" phrases, but we must give full credit to the
language the parties have chosen to include -- or not include -- in their
agreement.

Collective bargaining agreements almost invariably explain that
arbitration proceedings will be "final," "binding," or "exclusive," or use other
words to that effect.  This agreement was drafted by parties well-versed in
labor matters and cognizant of that convention.  The omission of any
indication that arbitration proceedings should be final and binding leads us to
conclude that, if we nevertheless declared them to be so, we would not be
enforcing the will of the parties, as expressed in their agreement.

As we stated in Communication Workers v. AT&T, 932 F.2d 199, 210
(3d Cir. 1991), words such as "exclusive forum" support a finding that the
parties intended to preclude judicial review.  Where the words "final,"
"binding," or "exclusive" fail to appear, and where the parties have not
shown a history of giving dispositive effect to arbitration decisions, we
cannot conclude that they intended to overcome the presumption favoring
access to a judicial forum.

The order of the district court will be affirmed.