AMERICAN FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, AFL-CIO, MICHIGAN COUNCIL 25
AND LOCAL 1416 v HIGHLAND PARK
BOARD OF EDUCATION

Docket No. 104934. Argued November 6, 1997 (Calendar No. 14). Decided
April 21, 1998. Rehearing denied *post*, 1206.

American Federation of State, County and Municipal Employees,
Council 25 and Local 1416, brought an action in the Wayne Circuit
Court against the Highland Park School District Board of Educa-
tion for breach of a collective bargaining agreement. Under the
agreement, the union had filed grievances and ultimately submitted
the matters to arbitration. The arbitrator issued an award in favor
of the union; however, by the terms of the collective bargaining
agreement, arbitration was nonbinding, and the defendant refused
to accept the award. The court, William Leo Cahalan, J., granted
summary disposition for the board, stating that the statute of limi-
tations precluded the complaint because the suit was filed more
than six years after the breaches of contract allegedly were com-
mitted. The Court of Appeals, MARILYN KELLY and J. R. COOPER, JJ.
(TAYLOR, P.J., dissenting), reversed, holding that the nonbinding
arbitration provision was mandatory and, therefore, the union was
required to exhaust its contractual remedies before filing suit.
Under equitable tolling principles, because the union filed suit
within six years of the arbitrator's decision, the suit was timely
(Docket No. 170915). The board of education appeals.

In an opinion by Justice CAVANAGH, joined by Chief Justice
MALLETT, an opinion by Justice BRICKLEY, and an opinion by Justice
BOYLE, the Supreme Court *held*:

The grievance procedures in this case were mandatory, and,
therefore, the employees were required to exhaust those proce-
dures before filing suit in circuit court for breach of their collective
bargaining agreement. The applicable statute of limitations is to be
tolled until the conclusion of the mandatory grievance procedures.

Affirmed and remanded.

Justice CAVANAGH, joined by Chief Justice MALLETT, further stated
that where a collective bargaining agreement expressly states that
a party shall use the grievance procedures provided under the

terms of the contract, the union or employee is not required to file suit until the grievance procedure is exhausted, even though the result is nonbinding arbitration. Under such circumstances, the applicable statute of limitations is to be tolled until the conclusion of the mandatory grievance procedures.

A grievance procedure is a process by which parties to a collective bargaining agreement have chosen to settle disputes. If the procedure is mandatory, the aggrieved party may be forced to complete the procedure before bringing suit; if it is not, the aggrieved party may choose to complete the grievance procedure, but is not required to do so, before filing suit. Grievance procedures and arbitration can be binding or nonbinding. This case involves a mandatory grievance procedure culminating in nonbinding arbitration.

Collective bargaining agreements are contracts that govern the terms and conditions of employment. There is a strong presumption in favor of using negotiated grievance procedures for resolving disputes over the interpretation or application of a collective bargaining agreement. Where the parties have expressly agreed that a particular grievance procedure shall be the method of resolving disputes, the employee should not be punished for exhausting those procedures before filing suit, even if the result is nonbinding arbitration. Thus, while the six-year period of limitation for breach of contract actions applies and begins to run on the date of the contract breach, in this case equity requires that the statute of limitations be tolled until exhaustion of the mandatory grievance procedures.

Justice BRICKLEY, concurring, further stated that grievance procedures can be either binding or nonbinding. The issue presented in this case is whether the grievance procedures are mandatory. If they are mandatory, then the aggrieved employees must exhaust them and the statute of limitations should be tolled during pursuit of the mandatory grievance procedures. Because exhaustion and tolling do not turn on whether the grievance procedure is final and binding, the Supreme Court need not resolve the apparent conflict between the area of law requiring exhaustion of contractual grievance procedures and the body of law stating that an employee is not required to exhaust internal union appeals procedures that do not provide either complete relief or reactivation of the grievance before filing suit in court. Exhaustion relates only to whether the process at issue is mandatory. Whatever procedures are required according to the collective bargaining agreement must be exhausted before filing suit.

Whether a procedure is final and binding should be irrelevant to an exhaustion/tolling analysis because, if the procedure was final and binding, an employee would be completely precluded from filing suit and the court would be precluded from addressing the merits of the claim, absent some type of fraud or other material defect in the grievance process. Tolling should not hinge on whether the grievance procedure provides final and binding relief because tolling should not be an issue, at least with regard to the primary claims, where final and binding relief is afforded under the collective bargaining agreement. This is so because, where final and binding relief is afforded, the grievant would be precluded from seeking relief in court, absent a defect serious enough to warrant relief from the arbitration decision. Equity requires tolling the statute of limitations where collective bargaining grievance procedures are mandatory and therefore are required to be exhausted. Thus, the employees' claims came within the six-year breach of contract statute of limitations.

Justice BOYLE, concurring, further stated that steps one through four of the grievance procedure were mandatory and required exhaustion before suit could be filed. The statute should be tolled because the agreement between these parties can fairly be said to contemplate exhaustion before resort to common-law remedies. While this case does not involve a breach of the duty of fair representation, and case law analyzing principles applicable to employee grievances may not be applicable here, the parties' submissions have not persuasively distinguished between a case brought by a union against the employer and one brought by an employee against both the union and employer. Nor have the parties addressed whether the public employment relations act has any implications for the applicable resolution of this question. The plaintiff's claims fell within the six-year period of limitation, requiring remand for a determination whether the defendant breached the collective bargaining agreement.

Justice WEAVER, dissenting, stated that tolling is inappropriate during either the first four steps of the grievance process or the last step, nonbinding and permissive arbitration.

Arbitration, as applied in this case is advisory only, and nonbinding. While exhaustion is required for mandatory procedures, tolling remains an equitable remedy and a fact-specific inquiry within the discretion of the trial court. A balance of the equities and competing labor policies reveals that tolling is not warranted in this case where the plaintiff had ample time to file suit. Rather, general breach of contract rules should apply, and the statute of limitations should run from the date that the alleged contractual breach

occurred, i.e., when the union first initiated grievance proceedings on behalf of the plaintiffs. Because the statutory period expired before these actions were filed in court, they are barred.

Justices KELLY and TAYLOR took no part in the decision of this case.

214 Mich App 182; 542 NW2d 333 (1995) affirmed.

*Ensley v Associated Terminals, Inc*, 304 Mich 522; 8 NW2d 161 (1943) overruled.

*Martens, Ice, Geary, Klass, Legghio, Israel & Gorchow, P.C.* (by *Renate Klass* and *Michael J. Bommarito*), for the plaintiffs-appellees.

*Brady, Hathaway, P.C.* (by *Thomas M.J. Hathaway* and *David A. Hardesty*), for the defendant-appellant.

CAVANAGH, J. The issue presented is whether the American Federation of State, County and Municipal Employees Council 25 and Local 1416 timely filed suit against the board of education of the school district of the city of Highland Park for breach of a collective bargaining agreement between the two parties. We find that suit was timely filed, thus, we would affirm the decision of the Court of Appeals.

I

On May 2, 1984, the board posted notices regarding two openings for custodian positions. Union members Alvin Casey and Larry Anderson applied for the positions. Despite being the two most senior bargaining unit applicants, the board decided to hire two persons who were not employed by the district. Moreover, the two men who were hired were related by blood or by marriage to members of the school board.

On June 30, 1985, the board laid off union members holding the positions of bus driver and security

guard, while also denying them certain benefits such as vacation pay, holiday pay, and "bumping rights."[1]

At all pertinent times, the union and the board were parties to a collectively bargained agreement governing the terms and conditions of certain bargaining unit employees, including custodians, building safety officers, bus drivers, and security guards. The parties' collective bargaining agreement included a grievance procedure culminating in nonbinding arbitration as a method for resolving disputes between the parties.

The provision of the collective bargaining agreement in question states in relevant part:

8-Grievance Procedure

It is the intent of the parties to this Agreement that the grievance procedure set forth herein shall serve as a means for a peaceful settlement of disputes that may arise between them as to the application and interpretation of this Agreement and disciplinary action or other conditions of employment. Further, it shall serve to settle complaints by a bargaining unit employee, or by the Union in its own behalf.

(a) A grievance is a complaint by a bargaining unit employee, or by the Union in its own behalf . . . .

*    *    *

(d) All grievances shall be handled by the following procedures:

Any maintenance and operational employee who feels his rights and privileges have been violated shall have the right to Union representation in presenting his grievance in the following order:

---

[1] "Bumping rights" are an employee's right to replace another employee in a different job description in the same or lower classification, thus, taking over the position.

STEP 1 To the Maintenance Shop Foreman . . . .

STEP 2 To the Director of Maintenance and Operations
. . . .

STEP 3 To the Assistant Superintendent . . . .

STEP 4 The Union may appeal the decision of the Super-
intendent . . . to the Board of Education . . . .

\*    \*    \*

(g) Arbitration—within ten (10) school days after deliv-
ery of the Board's decision, a grievance may be appealed to
advisory arbitration by the Union. . . . The arbitrator's
decision shall be advisory only and shall not be binding
upon any party except in matters involving wages, dis-
charge or suspension.

Pursuant to the collective bargaining agreement,
the union filed grievances and ultimately submitted
the matters to arbitration.[2] The arbitrator issued an
award in favor of the union; however, by the terms of
the collective bargaining agreement, the arbitration
was nonbinding,[3] and defendant refused to accept the
arbitrator's award.

On April 15, 1991, plaintiffs instituted the present
cause of action in circuit court, alleging a violation of
the collective bargaining agreement. Defendant
moved for summary disposition, stating that the stat-

---

[2] Step 4 of the grievance procedures was completed on September 17,
1985, and November 12, 1985, respectively. The arbitration award for both
procedures was dated October 16, 1990.

[3] Actually, the collective bargaining agreement provided that arbitration
would be nonbinding in all matters except wages, discharge, or suspen-
sion. Initially, the union argued that the grievances in question involved
wages, and thus, arbitration was binding. The board disagreed, arguing
that the disputed grievances did not involve wages and, thus, arbitration
was not binding. The parties submitted the issue whether arbitration was
binding. The arbitrator held that the grievances did not involve wages;
therefore, his decision was nonbinding. Because the parties do not raise
that issue here, we assume for purposes of this appeal that the arbitration
of the grievances in question is nonbinding.

ute of limitations precluded the complaint because the suit was filed more than six years after the breaches of contract were allegedly committed.

The circuit court held in favor of the board and entered summary disposition against the union. It stated that the grievances were filed in July 1984 and February 1985, respectively. The court held that the statutory period of limitations for the two claims expired in July 1990 and February 1991. Therefore, the suit that was filed in April 1991 was time barred.

The union appealed in the Court of Appeals, which reversed. In a two-to-one decision by Judge Marilyn Kelly, the Court held that the nonbinding arbitration provision was mandatory; therefore, the union was required to exhaust its contractual remedies before filing suit. Under equitable tolling principles, because the union filed suit within six years of the arbitrator's decision, the suit was timely. 214 Mich App 182; 542 NW2d 333 (1995).

The dissent, by Judge Clifford Taylor, held that while the grievance procedure was mandatory, the nonbinding arbitration was permissive. Therefore, the union did not have to exhaust its contractual remedies before filing suit. The dissent held that the union should have filed suit at the time the contract was breached; thus, the complaint by the union against the board was time barred, and the principles of equitable tolling should not apply. *Id.* at 191-194.

II

The issue presented is one of first impression. In fact, to our knowledge, there is no case in the country dealing with precisely the same issue. This is so because the parties have negotiated a unique collec-

tive bargaining agreement, providing a mandatory grievance procedure that ends with nonbinding arbitration in all matters, except those dealing with wages, discharge, or suspension. To understand why this combination is unique, we must first examine the terms used to describe the methods of dispute resolution between parties.

The grievance procedure is the process by which the parties have chosen to settle their disputes. Typical grievance procedures provide a multistep process of resolution and appeal. The grievance procedure (which we will refer to as the multistep process of appeals not including arbitration) and arbitration may be mandatory or they may be permissive. If the procedure is mandatory, the aggrieved party may be forced to complete the grievance procedure before bringing suit in court. If the procedure is not mandatory, the aggrieved party may choose to complete the grievance procedure first, but is not required to do so, before filing suit.

The grievance procedure and arbitration can also be either binding or nonbinding (sometimes referred to as advisory). This simply means that, if binding, the parties must adhere to the decision of the arbitrator or the person of highest appellate authority under the grievance process. If nonbinding, the parties are not bound by the decision of the final appellate authority or arbitrator, but they may mutually agree to abide by the decision if they so choose.[4]

---

[4] In a situation in which the procedure is binding, generally a party may only seek limited review of the decision in court if it is alleged that the decisionmaker somehow exceeded the scope of authority. Otherwise, the decision is the exclusive remedy of the parties. If the decision is nonbinding, the parties may not sue to enforce the award, but they may sue to enforce the provisions of the underlying collective bargaining agreement.

Most collective bargaining agreements provide for some sort of grievance procedure (mandatory or permissive) and binding arbitration. Over the past two decades, the courts have spent most of their time determining whether the terms of a particular grievance procedure are mandatory or permissive. As will be explained in more detail below, as a general rule, most courts have held that grievance procedures set out by the parties are mandatory. In those cases, almost all the procedures ended in binding arbitration. In fact, as we noted in *Breish v Ring Screw Works*, 397 Mich 586, 594; 248 NW2d 526 (1976), at that time, approximately ninety-six percent of contracts had provisions that resulted in final and binding arbitration as the result of the grievance procedure. Our situation today is unique because we have a rare combination: mandatory grievance procedures culminating in nonbinding arbitration.

Having stated this general background, it is important to understand the underlying arguments of the parties, and those arguments that the parties are not making. The union asserts that regardless of whether the final step of a grievance procedure is nonbinding, the entire process of going through the grievance procedure and arbitration is mandatory under the terms of the contract. Therefore, because the grievance procedure and arbitration are mandatory, the statute of limitations should be tolled until the completion of both steps.

The board, on the other hand, argues that regardless of whether the grievance procedure and arbitration are mandatory under the contract, if they end in a nonbinding result, it would be futile for the parties to exhaust the entire procedure before filing suit.

Having stated the positions of both sides, we note that, contrary to the position taken by both the majority and dissent in the Court of Appeals, the issue is not whether the arbitration provision was mandatory.[5] Rather, regardless of whether the grievance procedure or arbitration is mandatory, if the process ends with something nonbinding, should the statute of limitations be tolled?

As this opinion will examine in the next section, there is a strong body of case law that favors exhaustion of grievance procedures before filing suit. Equally persuasive is a body of case law suggesting that if an agreement cannot provide a binding result, the aggrieved party may file suit before exhausting contractual remedies. Our task today is to resolve the apparent conflict that occurs when the two areas of law are merged.

---

[5] Counsel for the board stated at oral argument:

If you submitted to non-binding arbitration as being mandatory, I would submit that that would make no difference. That would be a distinction without a difference because at the end of the day you don't have a decision that forces the union and the employer to abide by it. If you have something that in effect does not give you full relief, you do not have the exhaustion requirement.

He also conceded:

If the Union chooses arbitration, the Board theoretically must go through with it. There's no provision to opt out.

He stated later:

[A]gain, the grievance procedure is only viewed under the contract as being mandatory if you want to pursue the advisory arbitration.

Therefore, whether the arbitration clause is mandatory is not an issue.

III

Since the beginning of the twentieth century, employees have banded together to form labor unions to protect themselves from unfavorable conditions at the workplace. As a tool for achieving their goals, unions and management have negotiated collective bargaining agreements, which are contracts that govern the terms and conditions of employment. Unlike contracts of adhesion, parties to a collective bargaining agreement usually are able to negotiate on an even playing field. Thus, both employers and unions are free to negotiate the relative terms of their contracts, and are able to settle on mutually agreed conditions governing the employees' working conditions. As a result, an entire body of federal labor law interpreting collective bargaining agreements has emerged over the decades.

A

In 1960, the United States Supreme Court decided three federal cases now known as the *Steelworkers Trilogy*.[6] These cases gave birth to a family of labor law that has continued until today. They establish a strong presumption in favor of using negotiated grievance procedures for resolving disputes over the interpretation or application of a collective bargaining agreement. In *United Steelworkers of America v American Mfg Co*, 363 US 564; 80 S Ct 1343; 4 L Ed 2d 1403 (1960), the Court stated that the policy favor-

---

[6] *United Steelworkers of America v American Mfg Co*, 363 US 564; 80 S Ct 1343; 4 L Ed 2d 1403 (1960); *United Steelworkers of America v Warrior & Gulf Navigation Co*, 363 US 574; 80 S Ct 1347; 4 L Ed 2d 1409 (1960); *United Steelworkers of America v Enterprise Wheel & Car Corp*, 363 US 593; 80 S Ct 1358; 4 L Ed 2d 1424 (1960).

ing negotiated dispute resolution mechanisms "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *Id.* at 566.

Only five years later, the United States Supreme Court issued a decision reinforcing the principle that contractual grievance procedures should be used. In *Republic Steel Corp v Maddox*, 379 US 650; 85 S Ct 614; 13 L Ed 2d 580 (1965), the Court stated:

> As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress. . . . *[U]nless the contract provides otherwise*, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. [*Id.* at 652 (citations omitted; emphasis added).]

As stated by the Court, federal courts must presume that the grievance procedures are mandatory unless otherwise expressly stated in the contract. Even language providing that an employee "may" discuss a complaint with a union committeeman before embarking on the next step of a grievance procedure does not demonstrate that an employee may ignore the contractual remedies provided under the agreement. Indeed, the Court stated that the

> [u]se of the permissive "may" does not of itself reveal a clear understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure and its time limitations in favor of a judicial suit. Any doubts must be resolved against such an interpretation. [*Id.* at 658-659.]

However, as noted by the board in this case, *Republic Steel* was decided on the basis of a grievance procedure that resulted in binding arbitration. Emphasizing the importance of binding arbitration, the Court stated that the policy favoring exhaustion of grievance procedures would be undermined if the Court held otherwise because "it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement." *Id.* at 653.

Later, in *Clayton v Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America,* 451 US 679; 101 S Ct 2088; 69 L Ed 2d 538 (1981), the United States Supreme Court distinguished the *Republic Steel* decision. The Court was faced with deciding whether an employee was required to exhaust the internal union appeals procedure before seeking redress from a court.[7] The Court stated that the policies behind the exhaustion requirement are only advanced where the internal procedures either grant the aggrieved employee full relief or reactivate his grievance. The Court held:

> Where internal union appeals procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance, exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes. In such cases, the internal union

---

[7] We note that internal union procedures differ from contractual grievance and arbitration procedures. The former are typically created by the union constitution and are designed to settle disputes between the employee and the union, while the latter are created by contract between the union and the employer and are designed to settle disputes between the employer and employee. Cf. *Clayton, supra.*

procedures are capable of fully resolving meritorious claims short of the judicial forum. Thus, if the employee received the full relief he requested through internal procedures, his [federal labor] action would become moot, and he would not be entitled to a judicial hearing. Similarly, if the employee obtained reactivation of his grievance through internal union procedures, the policies underlying *Republic Steel* would come into play, and the employee would be required to submit his claim to the collectively bargained dispute-resolution procedures. In either case, exhaustion of internal remedies could result in final resolution of the employee's contractual grievance through private rather than judicial avenues.

By contrast, where an aggrieved employee cannot obtain either the substantive relief he seeks or reactivation of his grievance, national labor policy would not be served by requiring exhaustion of internal remedies. In such cases, exhaustion would be a useless gesture: it would delay judicial consideration of the employee's [federal labor] action, but would not eliminate it. The employee would still be required to pursue judicial means to obtain the relief he seeks under [federal labor law]. Moreover, exhaustion would not lead to significant savings in judicial resources, because regardless of the outcome of the internal appeal, the employee would be required to prove de novo his [federal] suit that the union breached its duty of fair representation and that the employer breached the collective-bargaining agreement. [*Id.* at 692-693.]

While this language tends to support the position of the board in this case, the opinion noted the difference between contractual grievance and arbitration procedures that are negotiated by the parties to a collective bargaining agreement "and are generally designed to provide an exclusive method for resolving disputes," and internal union procedures that do not arise under the terms of a contract. *Id.* at 695-696. The Court stated, "Because of this distinction, the policies underlying *Republic Steel*, encouraging pri-

vate resolution of grievances arising out of the collective-bargaining process, are not directly applicable to the issue whether to require exhaustion of internal union procedures." *Id.* at 696. Therefore, the Court held that if the internal grievance procedures are inadequate, "the employee's failure to exhaust *should be excused,* and he should be *permitted* to pursue his claim . . . in court under [federal labor law]." *Id.* (Emphasis added.)

The only case that we find extending the holding of *Clayton* to the collective bargaining context is a federal district court decision from the Eastern District of Pennsylvania. However, the case is only reported in the Labor Relations Reference Manual, not in any federal reporter. In *Metropolitan Dist Council of Philadelphia v Pomerantz & Co,* 149 LRRM 3056 (1995), the court, in a cursory four-sentence paragraph, stated that where a collective bargaining agreement merely contemplates a series of meetings among various representatives from the disputing parties that result in nonbinding arbitration, the exhaustion requirement does not "impede" the plaintiff's ability to demand direct resolution in court. However, we note that *Pomerantz* does not address the identical issue presented here, because, in this case, the contract specifically provides that the grievance procedure "shall" be exhausted. This mandatory language is a far cry from the agreement in *Pomerantz,* which stated that the procedure "merely contemplates a series of meetings" between the union and the employer.

B

As can be seen from the cited cases, there are two distinct areas of law relevant to this case. One area supports the proposition that grievance procedures are deemed mandatory unless specifically stated otherwise, and those procedures must be exhausted internally; the other supports the proposition that exhaustion is not required where the result is not the exclusive remedy of the parties. As we stated earlier, we are forced to resolve the apparent conflict when the two areas are merged.

We would hold that where the parties have expressly agreed that a particular grievance procedure "shall" be the method of resolving disputes, we will not punish the employee for exhausting those procedures before filing suit, even if the result is non-binding arbitration.[8] However, we recognize that the uniqueness of this case dictates its result.

We agree with the proposition stated by the United States Supreme Court in *Clayton, supra* at 696, that in cases where the contract does not specifically state otherwise, "[i]f the internal procedures are inadequate, the employee's failure to exhaust should be *excused,* and he should be *permitted* to pursue his claim . . . ." (Emphasis added.) We do not feel that our decision today conflicts with the principles stated in *Clayton.* While the employee in *Clayton* was "excused" from exhausting the internal union procedure and was "permitted" to go to court to enforce his claim, we do not feel that he would have been

---

[8] This is especially true where there was a dispute between the parties regarding whether arbitration of the grievances in question was nonbinding. See p 79, n 3.

*required* to file suit before exhausting his contractual remedies. Nor do we feel that the Court would hold against the union representing an employee the fact that the employee exhausted his contractual grievance procedure before filing suit, especially where, as here, the union was a party to a contract that expressly stated that the employee "shall" follow a four-step grievance procedure. We feel this principle is consistent with *Republic Steel*. Therefore, where the language of a contract expressly states that a grievance shall be handled in a particular manner, we would allow the statute of limitations to be tolled while the union or employee is exhausting that mandatory procedure, regardless of whether the result is nonbinding.

C

We agree with the Court of Appeals in this case that the six-year period of limitation for breach of contract actions applies. MCL 600.5807(8); MSA 27A.5807(8). A claim accrues, for purposes of the statute of limitations, when suit may be brought. *Harris v City of Allen Park*, 193 Mich App 103, 106; 483 NW2d 434 (1992); *Smith v Treasury Dep't*, 163 Mich App 179, 183; 414 NW2d 374 (1987). For contract actions, the limitation period generally begins to run on the date of the contract breach. *Id.* Here, the claims accrued on the dates the grievances were filed, which were July 1984 and February 1985, respectively. We also agree with the Court of Appeals that plaintiffs' claims should have been equitably tolled. We would hold that the statute of limitations will be tolled until exhaustion of mandatory grievance procedures provided under a contract.

We note that we need not decide whether the arbitration provision under the collective bargaining agreement was mandatory. As the dissent in the Court of Appeals noted, the grievance procedure (steps 1-4) was mandatory. 214 Mich App 191. The grievance procedures were completed in September and November 1985. Suit was filed in April 1991, less than six years after the completion of step 4 of the grievance procedure. Under the six-year period of limitation, suit was timely filed even if arbitration was not mandatory. Therefore, we need not address whether, under the terms of this unique contract, the arbitration clause was also mandatory.[9]

In conclusion, where a collective bargaining agreement expressly states that a party "shall" use the grievance procedures provided under the terms of the contract, we would hold that the union or employee is not required to file suit until the grievance procedure is exhausted, even though the result is nonbinding arbitration. Under such circumstances, the applicable statute of limitations should be equitably tolled until the conclusion of the mandatory grievance procedures.

---

[9] We note that to the extent that this decision may be inconsistent with our prior decision in *Ensley v Associated Terminals, Inc*, 304 Mich 522; 8 NW2d 161 (1943), we expressly overrule it. *Ensley* was decided before the enactment of the National Labor Relations Act, 29 USC 151 *et seq.* and the claim would now be preempted by federal law. Furthermore, since the United States Supreme Court's decisions in the *Steelworkers Trilogy*, n 6 *supra*, we have consistently used federal precedent for guidance in matters concerning labor law. See, e.g., *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309; 550 NW2d 228 (1996); *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Michigan Transportation Authority*, 437 Mich 441; 473 NW2d 249 (1991); *Bay City Ed Ass'n v Bay City Public Schools*, 430 Mich 370; 422 NW2d 504 (1988).

We would affirm the decision of the Court of Appeals and would remand this case for a determination whether defendant breached the collective bargaining agreement.

MALLETT, C.J., concurred with CAVANAGH, J.

BRICKLEY, J. (*concurring*). I agree with the result reached by the lead opinion in this case. However, I am unable to agree with some of its analysis. I agree that the grievance procedures in this case were indeed mandatory and, therefore, the employees were required to exhaust those procedures before filing suit in circuit court for breach of their collective bargaining agreement. *Ante*, p 81. I also agree that such grievance procedures can be either binding or nonbinding. *Id.* However, I disagree with the lead opinion's statement of the issue presented, that is, "regardless of whether the grievance procedure or arbitration is mandatory, if the process ends with something nonbinding, should the statute of limitations be tolled?" *Id.*, p 83. I believe the issue presented is whether the grievance procedures are mandatory. If they are mandatory, then the aggrieved employees must exhaust them, and the statute of limitations should be tolled during pursuit of the mandatory grievance procedures.

Because I believe that exhaustion and tolling do not turn on whether the grievance procedure is final and binding, I do not agree with the lead opinion that this Court is "forced to resolve the apparent conflict" between the area of law requiring exhaustion of contractual grievance procedures and the body of law stating that an employee is not required to exhaust internal union appeals procedures that do not provide

either complete relief or reactivation of the grievance before filing suit in court. *Id.*, p 89; *Clayton v Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America*, 451 US 679, 692; 101 S Ct 2088; 69 L Ed 2d 538 (1981). The lead opinion acknowledges that the Supreme Court in *Clayton* specifically noted that, because of the distinction between collective bargaining agreement grievance procedures, which arise under the terms of a contract, and internal union procedures, which do not arise under the terms of a contract, the policy encouraging private resolution of grievances arising out of the collective bargaining process was not directly applicable in *Clayton*.[1] *Ante*, pp 87-88; *Clayton* at 696.

I also agree with the lead opinion's conclusion that the grievance procedure in this case was mandatory, as evidenced by use of the word "shall" preceding the description of the four-step grievance procedure to which the parties agreed in the collective bargaining agreement. I find a case from the federal Court of

---

[1] *Clayton* did not address tolling the statute of limitations in the context of internal union appeals. In fact, the federal courts are in conflict on this issue. The Sixth Circuit noted that some courts have extended the reasoning of *Clayton* and held that only where the process could provide complete relief to a grievant is the statute of limitations tolled. *Robinson v Central Brass Mfg Co*, 987 F2d 1235, 1241 (CA 6, 1993). Other courts have held that the statute of limitations is tolled even during the pursuit of internal union remedies, even where those remedies are later determined futile. *Id.* Even assuming that the first approach is correct, tolling in these circumstances is based on the Supreme Court's reasoning regarding when *exhaustion* is required in the internal union appeals process. Here, we are holding that exhaustion of the grievance procedure is required because it is *mandatory*. While it is true that the basis of the *Clayton* decision is that exhaustion is only required where final and complete relief is afforded, that is *not* the basis of our holding in this case. The majority holds that the first four steps were mandatory and *that* is the basis of our holding requiring exhaustion. Therefore, in my opinion, it is on that basis alone that we should determine whether tolling is appropriate.

Appeals for the Third Circuit quite persuasive in its discussion of the difference between "mandatory" and "final and binding" relief. In *Orlando v Interstate Container Corp*, 100 F3d 296, 298 (CA 3, 1996), the collective bargaining agreement provided that "grievances shall be processed in the following manner" and laid out a four-step procedure. Step 4 provided that if the dispute had not been settled at that point, the union could give the company "notice of its intention to submit the grievance to arbitration" and request the American Arbitration Association to submit a list of arbitrators. *Id.* at 298.

In *Orlando*, the parties agreed that the grievance was arbitrable, that arbitration was mandatory, and that it had resulted in an award; the only issue was whether the award was "final" in the sense that the courts may not readjudicate the grievance. *Id.* at 300. The court stated:

> It is important to distinguish between terms sometimes used interchangeably in this field. Arbitration may be mandatory in the sense that the parties are required to use that procedure. Although appellate rulings have used the word "exclusive," they do not govern the issue of whether the arbitration awards are "final" in the sense that they preclude resort to a section 301 suit on the merits, but rather the opinions refer to the requirement that the grievance procedures be exhausted before filing suit. [*Id.* (citations omitted).]

The court disagreed with the employer's argument that because the contract makes arbitration *mandatory*, it must necessarily be *final* as well. The lack of provision for finality does not overcome the presumption of access to the courts for review on the merits. *Id.* at 300. Finally,

*[m]andatory arbitration prior to resort to a court is a dif-
ferent concept from mandatory arbitration precluding
resort to a court.* We do not discourage, but continue to
endorse, the submission of grievances to arbitration. What
we do decline to recognize is an expansive interpretation of
the dispositive effect of arbitration when the collective bar-
gaining agreement provides no basis for such a construc-
tion. [*Id.* at 300 (emphasis added).]

Whether referring to the grievance procedure or an
arbitration provision, there is a distinct difference
between "mandatory" and "final and binding." In my
view, exhaustion relates only to whether the process
at issue is *mandatory*. The courts must enforce col-
lective bargaining agreements as they are written.
Whatever procedures are *required* according to the
collective bargaining agreement must be exhausted
before filing suit. Most important, this analysis com-
ports with our decision in *Grand Rapids v Grand
Rapids Lodge No 97, Fraternal Order of Police*, 415
Mich 628, 636; 330 NW2d 52 (1982), in which we held:

While most collective-bargaining agreements provide for
arbitration as the final step in an agreed-upon grievance
procedure, that is purely a matter of choice by the parties.
Some collective-bargaining agreements set forth a proce-
dure for resolving grievances arising in the administration
of the contract that does not include arbitration. Others set
forth a procedure which does not provide a means of decid-
ing a grievance that parties cannot resolve by negotiation.
Still others provide no procedure at all for resolving
grievances.

If a collective-bargaining agreement contains a grievance
resolution procedure, the courts generally require exhaus-
tion of that procedure before the initiation of a lawsuit. If
the grievance procedure includes arbitration, the courts
normally defer to the arbitration decision. However, where
arbitration is not the mandatory final step in a grievance

procedure, a member of the union aggrieved by the
asserted breach of the collective-bargaining agreement may
resort to an action at law to obtain satisfaction.

We, too, have recognized the importance of the dis-
tinction between a mandatory grievance procedure
and one that provides final and binding relief. More-
over, I believe that the important policies of collective
bargaining agreement enforcement and resolution of
labor disputes are best served by recognizing the
effect of this distinction.

Moreover, contrary to the dissent's analysis,
whether the procedure is "final and binding" should
be irrelevant to an exhaustion/tolling analysis
because, if the procedure was indeed "final and bind-
ing," the employee would be *completely precluded*
from filing suit and the court would be precluded
from addressing the merits of the claim, absent some
type of fraud or other material defect in the grievance
process. The dissent's position that, because neither
the arbitration provision nor the grievance procedure
provided final and binding relief, the statute of limita-
tions should not be tolled during the grievance pro-
cess is untenable because that does not address the
"mandatory" nature of the first four steps of the griev-
ance procedure.[2] Thus, regardless of the arbitration

---

[2] The dissent also asserts that the body of labor law establishing the
exhaustion requirement derives from 29 USC 173(d). *Post,* p 100. How-
ever, the instant case is governed by the public employee relations act,
MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.* It is true that the PERA is pat-
terned after the federal National Labor Relations Act. *Demings v City of
Ecorse,* 423 Mich 49, 56; 377 NW2d 275 (1985). Moreover, in " 'construing
our state labor statutes we look for guidance to "the construction placed
on the analogous provides of the NLRA by the [National Labor Relations
Board] and the Federal Courts." ' " *Id.* However, in relying on § 173(d), the
dissent fails to refer to an analogous provision in the PERA that would
require us to look to federal interpretation of § 173(d). In *Demings,* the

provision, which is arguably not "mandatory" as well as not "final and binding," the first four steps were absolutely mandatory and, therefore, must have been exhausted before filing suit on the merits of the claims, regardless of whether they provided final and binding relief or whether the arbitration provision provided final and binding relief.

For the same reason that I am not in complete agreement with the analysis of the lead opinion, I disagree with the dissent. Tolling should not hinge on whether the grievance procedure provides final and binding relief because tolling should not be an issue, at least with regard to the primary claims, where final and binding relief is afforded under the collective bargaining agreement. This is so because where final and binding relief is afforded, the grievant would be precluded from seeking relief in court, absent a defect serious enough to warrant relief from the arbitration decision.

In my opinion, equity requires tolling the statute of limitations where collective bargaining grievance procedures are mandatory and are therefore required to be exhausted. Here, the statute of limitations was tolled for less than one year, and no evidence was presented that the employees sat on their claims. While they were not pursuing mandatory grievance procedures after 1985, they continued to negotiate

---

fair representation provisions in the PERA were "replicas" of the federal provisions. *Id.* at 57. Moreover, we do not have the possible "disturbing consequence of departing from the federal model" that results in public employees being treated differently under the PERA from private employees under the NLRA. *Id.* at 67. The identical treatment required by the PERA was based on the identical provisions regarding fair representation. Moreover, I do not believe that either the lead opinion's or my own analysis is in conflict with federal precedent.

with the school board and pursued arbitration in an attempt to resolve their disputes. Thus, I agree with the lead opinion's conclusion that the employees' claims came within the six-year breach of contract statute of limitations.

BOYLE, J. (*concurring*). I join in the analysis of Justice BRICKLEY and hence the result reached by Justices CAVANAGH and BRICKLEY for the reason that steps 1 through 4 of the grievance procedure were mandatory and required exhaustion before suit could be filed. I agree that the statute should be tolled because the agreement between these parties can fairly be said to contemplate exhaustion before resort to common-law remedies. In so concluding I recognize that this case does not involve a breach of the duty of fair representation. *Goolsby v Detroit*, 419 Mich 651, 660, n 5; 358 NW2d 856 (1984), and that case law analyzing principles applicable to employee grievances may not be applicable here. However, the parties' submissions have not persuasively distinguished between a case brought by the union against the employer and one brought by an employee against both the union and employer. Nor have the parties addressed whether the public employment relations act, MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*, has any implications for the applicable resolution of this question. Thus, I agree that plaintiff's claims fell within the six-year period of limitation and would affirm the Court of Appeals and remand this case for a determination whether defendant breached the collective bargaining agreement.

WEAVER, J. (*dissenting*). Because I find that equity does not require tolling in this case where the plaintiffs had over five and one-half years to file their

breach of contract claims, I dissent. I would hold that
the Court of Appeals erred in reversing the trial
court's finding that plaintiff's breach of contract
action was time-barred.

I

I would hold that tolling is inappropriate either dur-
ing the first four steps of the grievance process, or
during the last step, nonbinding and permissive
arbitration.[1]

A

The United States Supreme Court acknowledged
that the federal rule regarding exhaustion of adminis-
trative remedies does not preclude a court suit where
the "collective bargaining agreement expressly agreed
that arbitration was not the exclusive remedy."
*Republic Steel Corp v Maddox*, 379 US 650, 657-658;
85 S Ct 614; 13 L Ed 2d 580 (1965). That is the case at
hand because I agree with the lead opinion that arbi-
tration, as applied to the facts in this case, is advisory
only and nonbinding.[2]

---

[1] The arbitration clause, contained in subsection g, provides in relevant
part:

> Arbitration—within ten (10) school days after delivery of the
> Board's decision, a grievance *may* be appealed to advisory arbitra-
> tion by the Union. The arbitrator shall be selected and the arbitra-
> tion shall be conducted under the rules of the American Arbitration
> Association. The fees and expenses of the arbitrator and of the
> American Arbitration Association shall be shared equally by the
> Board and the Union. *The arbitrator's decision shall be advisory
> only and shall not be binding upon any party except in matters
> involving wages, discharge or suspension.* [Emphasis added.]

[2] The last sentence of the arbitration provision indicates in no uncer-
tain terms that arbitration is final and binding only in a dispute over
"wages, discharge or suspension," which this case is not.

Federal courts have held:

> A resolution procedure that does not provide such con-
> clusive and binding resolution is not the type intended to
> preclude judicial resolution by invoking the exhaustion
> requirement. Hence, the exhaustion requirement does not
> impede plaintiff's ability to demand direct judicial attention
> to the settlement of their § 301 claim. [*Metropolitan Dist
> Council of Philadelphia v Pomerantz & Co*, 149 LRRM
> 3056, 3057 (1995).][3]

Furthermore, the body of labor law establishing and
adhering to the exhaustion requirement derives from
the Congressional declaration that "[f]*inal* adjustment
by a method agreed upon by the parties is declared to
be the desirable method for settlement of grievance
disputes arising over the application or interpretation
of an existing collective-bargaining agreement." 29
USC 173(d) (emphasis added). There is no "final
adjustment" under this agreement because, by its own
terms, arbitration is nonbinding.

Moreover, other courts have recognized the rele-
vance of the mandatory or permissive character of a
grievance procedure in determining whether or not to
toll. Indeed, one court found that

---

Further evidence that the parties did not intend for arbitration to be the
exclusive remedy is the preamble to the entire process, which clearly
states that the process is only "a means" of resolving labor disputes.

[3] I find the lead opinion's attempt to distinguish the *Pomerantz* case
unpersuasive. First, I find the lead opinion's characterization that the
"contract specifically provides that the grievance procedure 'shall' be
exhausted," *ante* at 88, to be misleading. Obviously, the term exhaustion
appears nowhere in the agreement. Whether or not the process at issue
must be exhausted before filing a legal action is a legal conclusion and
the very issue before this Court.

Further, because I disagree with the lead opinion's interpretation of this
agreement and application of the law, I find *Pomerantz* to be relevant and
highly instructive.

> common sense suggests that the limitations period should
> not be tolled during a plaintiff's exercise of optional union
> remedies. Allowing such a result would involve granting
> plaintiffs power to control § 301 litigation to a degree not
> likely contemplated when the statutes were enacted. That
> is, a plaintiff could opt for an internal procedure insuffi-
> cient to conclude in complete relief, and dependant [sic]
> upon the outcome, either relitigate the entire dispute or
> simply seek a judicial determination of the issue omitted
> from the union proceeding. Obviously, such a system is
> contrary to a policy favoring speedy resolution of labor dis-
> putes. [*Smith v Expert Automation, Inc*, 726 F Supp 1080,
> 1081 (ED Mich, 1988).]

The lead opinion declines to address whether arbitra-
tion is mandatory or permissive.[4] I find, however, that
that issue is relevant when considering whether to
toll, in light of the rationale offered in *Smith, supra*,
and that the parties clearly intended for arbitration to
be permissive. Indeed, subsection g is distinct and
separate from the preceding mandatory four-step
grievance process in subsection d and, unlike subsec-
tion d, contains the following permissive language: "a
grievance *may* be appealed to advisory arbitration by
the Union." (Emphasis added.) While "may" usually
denotes a permissive provision, federal labor law has
established that the use of the term "may" in an arbi-
tration agreement is insufficient indicium *by itself*
that the parties negotiated for permissive, rather than
mandatory, arbitration. *Republic Steel Corp v Mad-*

---

[4] It seems to me this issue should not be avoided. Indeed, it would be
illogical, and contrary to the contractual principle of giving import to each
contractual provision, to toll the statute of limitations only during the
four-step process if arbitration was the final, mandatory step in the griev-
ance procedure.

*dox, supra* at 658-659. However, as seen below, "may" is not "indicium by itself" in this case.[5]

The agreement terms, such as subsection j, serve as further indicia that the parties intended arbitration to be discretionary.[6] Subsection j clarifies that the union or an individual is not required to arbitrate all claims. To interpret the term "may" in the arbitration provision to mean only that the union or individual does not have to arbitrate every grievance would be to render that provision redundant and unnecessary in light of subsection j. Such an interpretation would be contrary to the judiciary's directive to interpret contractual provisions in a manner that harmonizes and gives effect to all provisions. In light of this directive, I interpret subsection g as providing for discretionary, permissive arbitration.

For these reasons, I would find tolling during this nonbinding and permissive arbitration process at issue to be inappropriate.

II

I would also hold that tolling during the four-step grievance process is similarly unwarranted, regardless of whether that process is mandatory or permissive. While exhaustion is required for mandatory procedures, tolling remains an equitable remedy and a fact-specific inquiry within the discretion of the trial court. *Robinson v Central Brass Mfg Co*, 987 F2d 1235, 1242 (CA 6, 1993). Therefore, even if the four-

---

[5] *Id.*

[6] Subsection j provides:

    The Union and/or the individual having filed the grievance has the right to withdraw the same without prejudice at any step.

step grievance process at issue were mandatory, this Court should still balance the equities to determine whether tolling is required in this case.

This Court has repeatedly identified the policies favoring statutes of limitations to be: affording parties a reasonable opportunity in which to bring suit, giving the opposition fair opportunity to defend, relieving the judicial system from stale claims, and protecting defendants from the fear of protracted litigation. *Chase v Sabin*, 445 Mich 190, 199; 516 NW2d 60 (1994), quoting *Bigelow v Walraven*, 392 Mich 566, 576; 221 NW2d 328 (1974).

I find that the policy considerations favoring tolling do not apply in the instant case. Therefore, I would hold that the trial court did not abuse its discretion in refusing to toll where the four-step grievance process was completed within roughly three months of the occurrence of the alleged contractual breaches. Indeed, the parties should have been aware, given the plain terms of their agreement, that arbitration was nonbinding and that judicial resort was always an option for whichever party was not fully satisfied by the arbitrator's decision. They had well over five years, more than a reasonable amount of time, in which to file a court action to preserve whatever claim they might have wanted to pursue in the event they were dissatisfied with the arbitrator's award. Their delay should not be subsequently excused by this Court in light of the generous six-year period of limitation.[7]

---

[7] See *Int'l Union v Hoosier Cardinal Corp*, 383 US 696, 708; 86 S Ct 1107; 16 L Ed 2d 192 (1966) (no tolling of the limitation statute where a union had a full three years to file after the dismissal of the state court action).

Moreover, with regard to the competing labor policies, the parties in this case were not unreasonably pressured by the limitation period, and, for this reason, there was no real danger of sacrificing employee rights by not tolling. Tolling is not necessary to preserve the parties' rights or to encourage resort to private resolution mechanisms, particularly where the arbitration process is clearly nonbinding and, by its own terms, affords no final resolution. Moreover, the majority's holding in this case frustrates the fundamental policy of promoting expeditious resolution of labor disputes.

Accordingly, I would find that a balance of the equities and competing labor policies reveals tolling is not warranted in this case where the plaintiff had ample time, indeed over five and one-half years after exhausting the four-step grievance procedure, to file suit.

III

I find general breach of contract rules apply, and that therefore, the statute of limitations should run from the date when the alleged contractual breach occurred. *Harris v City of Allen Park*, 193 Mich App 103, 106; 483 NW2d 434 (1992). In this case, the latest

---

I would note that, in considering the most applicable limitation period for hybrid § 301 claims against the union and employer, the United States Court of Appeals for the Seventh Circuit considered the problem of delay and found that

the limitation period for seeking to vacate an arbitration award was the most analogous one. The alternatives, such as tort or contract limitations, were simply too long. Many of those alternatives often allowed as long as six years to pass before filing suit. [*Frandsen v Brotherhood of Railway, Airline & Steamship Clerks*, 782 F2d 674, 680 (CA 7, 1986).]

possible dates when the alleged breaches occurred would be July 6, 1984, and February 19, 1985, when the union first initiated grievance proceedings on behalf of the plaintiffs. The lead opinion correctly recognizes that the applicable period of limitation for breach of contract actions is six years. MCL 600.5807(8); MSA 27A.5807(8). Therefore, the statutory period expired in July 1990 and February 1991, respectively. I would, therefore, hold that these actions, filed on April 15, 1991, were barred because of the expiration of the statutory limitation period.

I note that where, as here, there is a risk that the statute of limitations would be tolled during the grievance or arbitration process, a party could file a court action, to preserve the claim, and then move to stay such action pending resolution of the grievance procedure or arbitration process.[8] Any claim that such a proposal would usher in a flood of potentially unnecessary litigation would be disingenuous and unfounded. First, this Court and the lead opinion in this case recognize that only four percent of all grievance procedures in existence in 1970 similarly culminated in nonbinding arbitration.[9] Thus, this case is truly an unusual situation. Second, as the parties to this action admit, it is unusual that it took these parties over six years to move through the grievance process and arbitrate their dispute.

For the foregoing reasons, I dissent. I would reverse the judgment of the Court of Appeals and reinstate the trial court's ruling that plaintiff's breach

---

[8] Under MCR 2.503, a court could adjourn a case pending resolution of the grievance process or arbitration.

[9] *Breish v Ring Screw Works*, 397 Mich 586, 594; 248 NW2d 526 (1976).

of contract action was barred under the applicable
six-year period of limitation.

    Kelly and Taylor, JJ., took no part in the decision
of this case.