NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0467n.06

No. 12-1474

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*May 09, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FUTURE NOW ENTERPRISES, INC.; TIMOTHY CIMMER, | ) ) ) | |
|     Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| JOHN FOSTER; STEVEN SCHWEIHOFER; GREAT LAKES AND RIVERS DEVELOPMENT, LLC; BLUE WATER OIL CO.; DON FOSTER, INC.; DON FOSTER OIL CO.; FOSTER ENERGY, INC.; FOSTER ENERGY SERVICES, LLC; FOSTER BLUE WATER OIL, LLC, | ) ) ) ) ) ) | THE EASTERN DISTRICT OF MICHIGAN |
|     Defendants-Appellees. | ) ) | |

Before:  WHITE and DONALD, Circuit Judges; VARLAN, Chief District Judge.[*]

**Bernice B. Donald, Circuit Judge.**  Future Now Enterprises, Inc. (FNE) and its sole

shareholder, Timothy Cimmer, allege that they embarked on a joint venture with Defendants-

Appellees John Foster and Steven Schweihofer to enter the retail natural gas market.  Plaintiffs

allege that the parties agreed that FNE and Cimmer would receive a combined 33% ownership

interest in the joint venture.  Despite alleged promises to do so, Foster and Schweihofer never gave

FNE or Cimmer the promised interest.  FNE and Cimmer filed suit, bringing claims for fraud, civil

conspiracy, breach of contract, quantum meruit, and breach of fiduciary duty against Foster,

_____

[*] The Honorable Thomas A. Varlan, Chief United States District Judge for the Eastern
District of Tennessee, sitting by designation.

Schweihofer, and a number of companies owned by Foster and Schweihofer. The district court dismissed these claims on the grounds that they were barred by the statute of limitations. We affirm.

**I.**

In February 2002, Cimmer and Foster began discussing the creation of a joint venture to market natural gas in the Midwest between FNE, Foster, and Schweihofer in which Cimmer and Foster would be principals. Cimmer alleges that he "made it clear that the only basis of his interest in a business venture with the Defendants . . . was as an equity owner through FNE." Cimmer claims that Foster expressly acknowledged Cimmer's ownership objectives and verbally agreed to them.

In May 2002, Cimmer and Foster agreed to form a business entity that would market natural gas in Michigan. According to FNE and Foster, the parties agreed that: (1) FNE would receive a 33% interest in the new business and would provide services as consideration for its ownership interest, (2) Cimmer would serve as the chief executive of the new business, (3) Cimmer would receive compensation for his services and reimbursement for expenses, (4) Foster would provide financial backing, and (5) Foster would have 66% ownership in the company. The agreement was not reduced to writing at that time. Cimmer contends that he began work in reliance on the agreement.

Macomb County Energy, LLC (Macomb Energy) was formed on June 27, 2002 by Schweihofer. Cimmer does not allege that he was named as a member or received any formal ownership in the company. Cimmer, nevertheless, registered Macomb Energy with the Michigan

Public Service Commission's "Gas Choice Program" and submitted a credit application to Michigan Consolidated Gas Company on behalf of Macomb Energy. Macomb Energy was approved as a supplier, and operations in Michigan began by late summer or early fall of 2002.

Cimmer alleges that on September 6, 2002, he met with Foster to refine the details of their joint venture, and that Foster took notes at their meeting, which included the structure and terms of the new venture.

On October 7, 2002, allegedly with full knowledge of Foster and Schweihofer, Cimmer filed articles of organization for My Choice Energy, LLC (MCELO) with the Ohio Secretary of State. Plaintiffs contend that several documents, filed then and later in October 2002, reflected that Cimmer, Foster, and Schweihofer were the owners of MCELO. On November 20, 2002, however, Schweihofer informed Cimmer that for legal and financial reasons the existing companies needed to be restructured, and MCELO needed to be dissolved. Cimmer acquiesced and filed dissolution papers for MCELO .

On November 20, 2002, Schweihofer, on behalf of defendant Blue Water Oil Co. (BWO), filed articles of organization to form Great Lakes and Rivers Development, LLC (GLARD). On the same day, Schweihofer, unbeknownst to Cimmer, filed articles of organization for Foster Blue Water Oil Company, LLC (FBW) and My Choice Energy, LLC (MCEM). MCEM's sole member was Foster Blue Water Oil Company, LLC (FBW), whose sole member was GLARD, whose sole member was BWO. Cimmer was not listed as a member of MCEM. Several days later, Schweihofer

allegedly told Cimmer that once MCEM was restructured, documents reflecting Cimmer's and FNE's ownership interest would be prepared. That never happened.

Plaintiffs assert that from May 2002 until 2005, when Cimmer was fired by Foster, he continued operating the business under the impression that he was an owner of MCEM through FNE. Plaintiffs contend that Cimmer's work included preparing a foreign entity registration for MCEM, submitting a new application for Macomb Energy to comply with new licensing procedures, and running the daily operations of Macomb Energy and MCELO (before it was dissolved), including contract negotiations and acquisitions. During this time, Cimmer alleges that, with the consent of Defendants, he identified himself as the CEO and President of both Macomb Energy and MCELO.

In August 2004, Cimmer discovered that neither he nor FNE held an interest in MCEM when Cimmer received gas certification paperwork that did not list FNE as a stakeholder. Cimmer met with Foster on January 26, 2005, and Foster signed and dated his September 2002 handwritten notes that Cimmer and FNE assert outlines the terms of the alleged ownership agreement. On February 11, 2005, Foster terminated Cimmer and told him that there was no agreement that gave Cimmer or FNE ownership in MCEM or MCELO. Foster subsequently accused Cimmer of embezzlement when he deposited funds payable to MCELO into the FNE account. A felony complaint charging Cimmer with embezzlement was issued on May 3, 2005.[2]

---

[2]On December 14, 2012, during the pendency of this appeal, the felony charges against Cimmer were dismissed without prejudice.

On February 10, 2011, Cimmer and FNE filed suit against Foster, Schweihofer, and a number of corporations owned or run by either Foster or Schweihofer, bringing claims for (1) fraud, (2) civil conspiracy, (3) breach of contract, (4) quantum meruit, and (5) breach of fiduciary duties. Defendants responded to the complaint with a motion to dismiss, attacking both the substance of the claims and the timeliness of the filing. The district court dismissed the claims as time barred. Plaintiffs timely appealed, but waive their breach of fiduciary duty claim.

**II.**

We review *de novo* the grant of a motion to dismiss under Rule 12(b)(6). *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 301 (6th Cir. 2011). The court must "accept all the . . . factual allegations as true and construe the complaint in the light most favorable to the [p]laintiff." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels. Com, L.P.*, 590 F.3d 381, 384 (6th Cir. 2009) (quoting *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). A claim survives a Rule 12(b)(6) motion where its "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To avoid a statute of limitations bar, a plaintiff must commence an action within a prescribed time frame measured from the date the claim accrues. *See Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 590 (6th Cir. 2001); Mich. Comp. Laws § 600.5827. A statute of limitations claim therefore has three variables: (1) the date the claim accrues; (2) the date the action is commenced; and (3) the

permissible period of delay between those two events. *See generally Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003).

**A.      Fraud**

Under Michigan law, the statute of limitations for fraud claims is six years.  Mich. Comp. Laws § 600.5813.  A claim for fraud accrues when the fraudulent misrepresentation is made. *Id.*  The claim accrues at the time when the wrong upon which the claim is based was done regardless of the time when damage results.  Mich. Comp. Laws § 600.5827; *see also Boyle v. Gen. Motors Corp.*, 661 N.W. 557, 559–560 (2003) (rejecting the proposition that a claim for fraud does not begin to accrue until the fraud is discovered or should have been discovered).  When a defendant fraudulently conceals the existence of the misrepresentation, the plaintiff may bring an action "at any time within 2 years after [he] discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim." Mich. Comp.  Laws § 600.5855; *see Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236–40 (6th Cir. 1992) (applying Michigan law).

Foster's first alleged misrepresentations occurred on June 27, 2002, when he and Cimmer agreed that Cimmer would hold a 33% ownership interest in the joint venture.  Cimmer argues that Foster made new fraudulent misrepresentations at the meeting on January 26, 2005, and that the falsity of those misrepresentations could not have been known until February 11, 2005.  Cimmer did not file the complaint until February 10, 2011, which was 15 days after the six-year statute of limitations expired even using the January 26, 2005 date. The applicable discovery rule, moreover,

gives Foster only "2 years after [he] discovers . . . the existence of the claim" to file a lawsuit. Mich. Comp. Laws § 600.5855; *Brownell v. Garber*, 503 N.W.2d 81, 83 (Mich. Ct. App. 1993) (stating that section 5855 provides that "fraudulent concealment of the existence of a cause of action makes the bringing of the action subject to the special two-year period of limitation[.]"). The cause of action was filed more than four years after the alleged fraud was discovered. As such, the fraud claim was filed outside the statute of limitations and was properly dismissed.

## B.      Civil Conspiracy

A civil conspiracy claim takes on the nature of the underlying tort for purposes of the statute of limitations. *Terlecki v. Stewart*, 754 N.W. 2d 899, 906 (Mich. Ct. App. 2008). In this case, the actionable tort is the intentional fraud. This claim, therefore, cannot survive because the fraud claim was untimely.

## C.      Breach of Contract

Cimmer's breach of contract claim is based on the May 2002 agreement and the September 2002 handwritten notes that outlined the alleged ownership agreement. Defendants argue that the claim accrued in 2004 when Cimmer became aware that Foster and Schweihofer were creating a new ownership structure and that neither he nor FNE were part of the ownership structure. Cimmer claims that the breach did not occur until February 11, 2005, the date Cimmer's employment was terminated. In an attempt to save the time-barred claim, Cimmer argues that Foster breached the

contract for Cimmer's continuous service, which is not barred until six years after the conclusion of the service.

The statute of limitations for a breach of contract claim is six years. Mich. Comp. Laws § 600.5807(8). A breach of contract claim generally accrues at the time the contract is breached regardless of the time when the damage results. Mich. Comp. Laws § 600.5827; *Am. Fed'n of State, Cnty.& Mun. Emps. v. Bd. of Educ. of the Sch. Dist. of the City of Highland Park*, 577 N.W.2d 79, 90 (Mich. 1998). In determining the date that the contract is breached, courts look to the terms of the agreement. *See Scherer v. Hellstorm*, 716 N.W. 2d 307, 310 (Mich. Ct. App. 2006). In cases where a party explicitly repudiates a contract, the breach occurs when the contract is repudiated. *See Ritchie v. Williams*, 395 F.3d 283, 290 (6th Cir. 2005). Where a contract requires the performance of continuous service, a claim is not barred until six years after the completion of the service. *Bay City v. Frazier*, 77 F.2d 570, 573 (6th Cir. 1935) (relying on Michigan law). The alleged contract was neither a service contract, nor a continuous service contract, because the agreement was to form and run a joint venture. We, therefore, will not reach the continuous service contract issue. Additionally, Cimmer never raised the revival by acknowledgment argument under Mich. Comp. Laws § 600.5866 before the district court.[1] As such, we will not consider the issue for the first time

---

[1] While the dissent is correct that we must read Plaintiffs' pleadings liberally when reviewing a Rule 12(b)(6) motion to dismiss, we will not review arguments that Plaintiffs simply did not assert. There are only four paragraphs located in two sections of Plaintiffs' amended complaint that can reasonably be said to discuss the January 26, 2005 meeting where the handwritten notes were signed.

The paragraphs are as follows:

No. 12-1474
*Future Now Enterprises,, Inc., et al. v. Foster, et al.*

on appeal. *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990) (an issue or claim must be litigated before the district court to be considered on appeal) .

We find that if a breach occurred it was on November 20, 2002, when Schweihofer filed articles of organization for MCEM and did not list FNE or Cimmer as members. The statute of limitations on the breach of contract claim expired on November 20, 2008. The discovery rule of Michigan Compiled Laws § 600.5855 for fraudulent concealment cannot save this claim because it was not filed within two years of the date Plaintiffs discovered the existence of the claim. Therefore, the district court properly dismissed the breach of contract claim as untimely.

---

**Common Factual Allegations Paragraph 94.** In January 2005 Plaintiff Cimmer was becoming impatient about receipt of the final documents and spoke to Defendant Foster. Foster represented that he needed additional time to meet with his attorneys to prepare the final document. He stated that the delay was because his other business activities were taking up so much of his time that he could not pay adequate attention to finalizing the transaction with Cimmer/FNE. (Pls.' Am. Comp. 16.)
**Common Factual Allegations Paragraph 95.** By this point in time, both the Michigan and Ohio operations were operating and showing great potential. (*Id.*)
**Common Factual Allegations Paragraph 96.** On January 26, 2005, Cimmer, now concerned over the repeated delays by Foster in having the final documents prepared asked Foster to acknowledge the previously unsigned September 2002 agreement. Foster met with Cimmer and Cimmer's business advisor on that date and readily executed and dated the September 2002 hand written agreement, providing Cimmer with the reassurance he sought.(*Id.*)
**Breach of Contract Paragraph 137.** As set forth above, Defendant John Foster on his own behalf and acting as an agent for the Foster companies entered into a contract which was evidenced by the Foster notes on September 6, 2002, and later executed by John Foster on January 26, 2005. (Pls.' Am. Comp. 23.)

At most, these are factual assertions; but they simply do not support any argument that Plaintiffs asserted a revival claim.

**D.      Quantum Meruit**

Plaintiffs argue that their quantum meruit claim is timely to the same extent that the contract claim is timely.  The contract claim is not timely, so neither is the quantum meruit claim.  *See Romeo Inv. Ltd. v. Mich. Consol. Gas Co.*, No.  260320, 2007 WL 1264008, at *8 (Mich. Ct. App. May 1, 2007) (Michigan courts will not permit a quantum meruit claim to proceed when the contract becomes unenforceable solely because the statute of limitations has expired).

**III.**

For these reasons, the district court properly dismissed Plaintiffs' complaint as untimely and its decision is affirmed.

No. 12-1474
*Future Now Enterprises,, Inc., et al. v. Foster, et al.*

**HELENE N. WHITE**, Circuit Judge, concurring in part and dissenting in part.

I join the majority except with respect to the contract-revival claim based on the January 26, 2005 meeting. I believe this claim was adequately presented in the district court and would remand this claim for further proceedings.

The majority asserts that Plaintiffs did not raise contract revival before the district court. Although the majority is correct that Plaintiffs did not specifically mention Mich. Comp. Laws § 600.5866—the Michigan revival statute on which they now rely—there are numerous references in the record to Plaintiffs' theory that Foster's signing of his September 2002 handwritten notes on January 26, 2005 constituted a "ratification" of the parties' prior ownership agreement. Plaintiffs repeatedly referred to Foster "executing" the notes on January 26, 2005 in their amended complaint, and asserted in their response to Defendants' motion to dismiss that, "given the signing of the notes on January 26, 2005, there can be little doubt that a reasonable person could infer *that the contract existed and was ratified on that date* and that therefore any breach must by force of logic have occurred subsequently, ergo the repudiation and rejection meeting of February 11, 2005." Similarly, Plaintiffs' counsel stated at the motion to dismiss hearing that the ownership agreement was "remade" by Foster signing and "ratif[ying] the previous representations." Reading Plaintiffs' pleadings liberally, as we must on a Rule 12(b)(6) motion to dismiss, Plaintiffs raised the argument that Foster's actions in January 2005 revived the alleged ownership agreement before the district court.

I also conclude that Plaintiffs' complaint states a viable revived-contract claim. Plaintiffs allege that Foster repeated his promise on January 26, 2005 and also signed the writing. Although the fraud claims based on these representations are barred because that claim accrued when the representations were made, the contract claim did not accrue until February 11, 2005, when Foster fired Cimmer and repudiated the alleged agreement. Thus, the claim based on the revived contract was timely. I would reverse and remand this one claim.